Larrell Jarvor PORTER, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000189–MR.

Supreme Court of Kentucky.

Dec. 22, 2011.

Samuel Todd Spalding, Lebanon, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, John Paul Varo, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Larrell Porter pled guilty to three counts of trafficking in a controlled substance in the first degree, second or subsequent offense; being a persistent felony offender in the second degree; and two counts of possession of drug paraphernalia. This plea, which resulted in a twenty-year prison sentence, was pursuant to the second plea deal offered by the Commonwealth, the first of which Porter rejected when he refused to comply with a condition attached to the plea deal, namely that he waive his right to view video recordings of the drug buys. The Commonwealth imposed the condition on its initial plea offer to protect the identity of the confidential informant and several active investigations. The trial court denied Porter's subsequent motion to withdraw his guilty plea, a ruling Porter challenges on appeal. Porter also argues the condition in the

initial plea offer violated his right to discovery and his "substantial rights" and, further, that the Commonwealth acted improperly when it conditioned the first plea deal on waiver of his right to view the video. For the following reasons, we affirm.

## RELEVANT FACTS

In November and December of 2006, police officers in Marion County, Kentucky used a confidential informant (informant) to make three controlled drug buys from Porter. Based on these transactions, Porter was indicted on three counts of trafficking in a controlled substance in the first degree, second or subsequent offense, a class B felony; two counts of possession of drug paraphernalia, a class A misdemeanor; and as a persistent felony offender in the second degree (PFO 2). The trial court's Order of Arraignment and Discovery (discovery order) required the Commonwealth to comply with several rules of discovery, including Kentucky Rule of Criminal Procedure (RCr) 7.24(2), which permits the defendant to inspect and copy "tangible objects" in the Commonwealth's possession or control. The discovery order also specified discovery must be completed seven days prior to the pretrial, which was set for October 20, 2008. On September 15, 2008, the Commonwealth filed a response to the discovery order, indicating the Commonwealth possessed an incriminating "Audio and Video CD of the drug transaction(s)," listing "Confidential informant, identity not to be revealed at this time" as a known eyewitness and averring the Commonwealth did not possess any exculpatory evidence.

At or around this time, the Commonwealth offered Porter a twelve-year sentence [1] for all of the crimes charged, pro-

---

1. It is unclear from the record whether the offer was for ten or twelve years, but we

vided Porter agreed not to view the video of the drug buys.[2] As part of this offer, defense counsel was permitted to view the video and disclose to Porter the entirety of its contents, except the identity of the informant. The Commonwealth explained the "counsel-only" condition was in place to protect the informant, to maintain the informant's usefulness as a law enforcement asset, and to preserve ongoing investigations in which the informant was involved. This initial offer of twelve years was withdrawn when Porter insisted on personally viewing the video. The Commonwealth sent the video to him on May 18, 2009. The Commonwealth then extended an offer of twenty years for each trafficking charge and twelve months for each drug paraphernalia charge, all to run concurrently for a total prison sentence of twenty years for all charges. Porter eventually accepted this offer and pled guilty on October 12, 2009.

On January 4, 2010, Porter moved to withdraw his guilty plea, claiming the condition attached to the first plea offer rendered his later plea unknowing and involuntary. Porter further alleged violation of both his right to discovery and his "substantial rights," as well as prosecutorial misconduct. After a hearing on the matter, the trial court denied Porter's motion, finding it was within the Commonwealth's discretion to offer a plea deal conditioned on the defendant waiving his right to view a video, in order to protect the identity of a confidential informant. Porter was sentenced to twenty years in prison in accord with his plea agreement and now appeals as a matter of right. Ky. Const. § 110(2)(b).

On appeal, Porter argues: (1) the condition imposed by the Commonwealth in its first plea offer rendered his later plea unknowing and involuntary and, thus, the trial court erred when it denied his motion to withdraw his plea; (2) the Commonwealth violated discovery rules when it limited his right to view the video as part of the initial plea deal; (3) the condition violated his "substantial rights"; and (4) the prosecutor's actions were improper. Finding no error, we affirm.

## ANALYSIS

### I. The Trial Court Properly Denied Porter's Motion to Withdraw His Voluntary and Knowing Guilty Plea.

A trial court may accept a guilty plea upon a determination, made on, the record, that the plea is voluntarily and intelligently made, "with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 623, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (quoting *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); *Edmonds v. Commonwealth*, 189 S.W.3d 558 (Ky.2006); RCr 8.08. In determining whether a guilty plea is voluntary, intelligent and sufficiently aware (hereinafter referred to as "voluntary"), the trial court considers the totality of the circumstances surrounding the guilty plea, an inherently fact-specific inquiry. *Bronk v. Commonwealth*, 58 S.W.3d 482 (Ky.2001). Similarly, when a defendant moves to withdraw his guilty plea, the court must hold a hearing to determine whether the plea was entered voluntarily. *Rodriguez v. Commonwealth*, 87 S.W.3d 8 (Ky.2002). If the trial court finds the plea was involuntary, it must

adopt twelve years as that is the term asserted by the Commonwealth on appeal.

2. Assuming the jury found Porter guilty of all charges, the indictments carried a minimum prison sentence of twenty years. The initial offer thus involved no PFO 2 enhancement.

grant the motion to withdraw. *Id.* If, however, the trial court determines the plea was voluntary, it may deny the motion to withdraw and enforce the plea. *Id.* The trial court is in the best position to determine if there was any "reluctance, misunderstanding, involuntariness, or incompetence to plead guilty," *Bronk,* 58 S.W.3d at 487, and "solemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). We review a trial court's finding regarding voluntariness for clear error, *i.e.,* whether the determination was supported by substantial evidence, and we review a trial court's ruling on a motion to withdraw for abuse of discretion, *i.e.,* whether it was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Edmonds,* 189 S.W.3d at 570.

The trial court in this case properly determined Porter's plea was voluntary and denied his motion to withdraw his plea. As to the first portion of the standard of review, we find the trial court did not err in determining Porter's plea was voluntary. At the initial plea hearing, the trial court ascertained Porter understood the charges and the plea offer, was not under the influence of any drugs or alcohol, and had not been coerced into pleading guilty. The trial court also explained to Porter that a guilty plea in this case could cause him to be charged as a persistent felony offender in the first degree and thus be subject to higher penalties in any future criminal cases. Porter indicated he discussed the offer with his attorney and understood the implications of his guilty plea, including the rights he was waiving by pleading guilty. Porter's counsel confirmed he discussed the guilty plea with Porter and stated he believed Porter entered the plea voluntarily. Porter himself affirmed he was freely and voluntarily pleading guilty. This substantial evidence supports the trial court's finding that the plea was voluntary.

■ As to the second portion of the standard of review, we find the trial court's decision to deny Porter's motion was reasonable, fair, and supported by sound legal principles. The trial court[3] properly held a hearing on the motion to withdraw, during which it considered counsel's arguments, the motion, the response filed by the Commonwealth and the record in the case, paying particular attention to the plea documents and the initial plea hearing. Considering the totality of the circumstances and finding Porter's plea was voluntary, the court denied Porter's motion to withdraw. There was no abuse of discretion.

Moreover, we fail to see how the Commonwealth's condition in the first plea offer—that Porter not view the video in order to protect the informant's identity—could render Porter's later plea unknowing or involuntary, given that Porter did receive the video five months prior to pleading guilty. Porter claims, "The defendant was forced to guess what evidence the Commonwealth had against him ... Certainly the Defendant's plea could not be considered "knowing" when he never knew what evidence the Commonwealth possessed." Appellant's Brief 4, 5. However, Porter *was* aware of the evidence against him because he received discovery more than a year before he pled guilty and, specifically, he received the contentious video nearly five months before he pled guilty. Contrary to his claims, when Porter pled guilty on October 12, 2009, he was well aware of the contents of the video and

---

**3.** By this time, Honorable Doughlas M. George had retired and Honorable Dan Kelly presided as Circuit Judge of Marion Circuit Court, Division I.

the evidence possessed by the Commonwealth.

## II. Porter's Discovery Rights Were Not Violated.

▮▮▮ There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).[4] "Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be." *Ruiz*, 536 U.S. at 629, 122 S.Ct. 2450. However, the defendant does not have a right to all information possessed by the prosecutor. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Nor is a defendant generally entitled to a list of witnesses from the opposing party. *Lowe v. Commonwealth*, 712 S.W.2d 944 (Ky.1986) ("[A] party to a criminal proceeding may not be compelled to provide a witness list to an opposing party") (quoting *King v. Venters*, 596 S.W.2d 721 (Ky.1980)). While parties may agree amongst themselves to provide "open file" discovery, *see, e.g., Barnett v. Commonwealth*, 763 S.W.2d 119 (Ky.1988), Kentucky's rules of discovery do not require the prosecution open wide its files to the defense. *See, e.g.,* RCr 7.24(2) (prosecution is not required to provide defendant with memoranda or other documents made by police officers in connection with the case). "The extent to which either party to a criminal proceeding may require information of the other is set forth in RCr 7.24." *King*, 596 S.W.2d at 721. The discovery rule at issue, RCr 7.24(2), provides in pertinent part,

> On motion of a defendant the court may order the attorney for the Commonwealth to permit the defendant to inspect and copy or photograph books, papers, documents or tangible objects, or copies or portions thereof, that are in the possession, custody or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of the defense and that the request is reasonable.

▮▮▮ The trial court, in its discovery order, required the Commonwealth to comply with this rule. Porter claims the Commonwealth violated his right to discovery when it made his ability to view the video a condition of the first plea offer. We disagree and will address the substance of Porter's claim, but begin by pointing out this claim suffers much the same infirmity as the claim just addressed regarding the withdrawal of Porter's guilty plea. A discovery violation justifies setting aside a conviction only where "there is a reasonable probability that if the evidence were disclosed the result would have been different." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008) (citations omitted). As noted above, the evidence at issue, the video, had been disclosed by the time Porter pled guilty. Lacking this crucial element, Porter's conviction cannot be set aside on this ground.

As to the substance of Porter's claim, we find there was no discovery violation be-

4. As discussed *infra, Brady*, 373 U.S. 83, 83 S.Ct. 1194, requires prosecutors to disclose to the defense exculpatory and impeachment evidence that is material. As courts have consistently reiterated, however, *Brady* is based on the due process concern regarding the right to a fair trial, and creates a rule of disclosure, not a constitutional right to discovery. *See e.g., United States v. Bagley*, 473 U.S. 667, 675 and n. 7, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial ... An interpretation of *Brady* to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present systems of criminal justice.") (internal citations omitted).

cause the Commonwealth disclosed the existence of the video and made it readily available to defense counsel and Porter. On September 15, 2008, about one month after the trial court entered its discovery order and well before the October 9, 2008 deadline for producing discovery, the Commonwealth responded to discovery and informed the defense of the existence of the video. Defense counsel was able to make arrangements and view the video without difficulty and, once Porter decided he also wanted to view the video, the Commonwealth promptly provided a copy. At no point did the Commonwealth conceal the tape, deny its existence, or attempt to withhold the tape from the defense. As such, the Commonwealth did not violate discovery. *See Berry v. Commonwealth,* 782 S.W.2d 625, 627 (Ky.1990) (overruled on other grounds by *Chestnut,* 250 S.W.3d 288) ("There is no evidence that the Commonwealth deliberately withheld the photos and thus the discovery order was not violated"). The Commonwealth did, however, condition a plea offer on the defendant waiving his right to a portion of discovery. As discussed below, such action is permissible under these circumstances.

### III. Conditioning the First Plea Offer on Porter Waiving His Right to View the Video Personally Did Not Violate Porter's Due Process Rights.

 "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge,* 431 U.S. at 71, 97 S.Ct. 1621. Plea bargaining enables the government to conserve vital and scarce resources and efficiently dispose of cases. The defendant avoids prolonged pretrial incarceration, the anxieties and uncertain-

ties of a trial, and he gets a speedy resolution of his case. The public is protected from those who are charged with a criminal offense and are prone to continue criminal conduct while released on bail. *Id.; Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). These benefits are only realized, however, when guilty pleas are secured with proper observance of due process. There is no constitutional right to plea bargain and it is within the prosecutor's discretion to decide whether to plea bargain or go to trial. *Commonwealth v. Reyes,* 764 S.W.2d 62 (Ky.1989). Balanced against this broad prosecutorial discretion are safeguards implemented to "insure the defendant what is reasonably due in the circumstances." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. For example, once the Commonwealth enters a plea agreement with a defendant, due process requires the Commonwealth honor the terms of the agreement, *Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004); a defendant pleading guilty must be counseled, absent a waiver, *Moore v. Michigan,* 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); and, as noted above, prior to. accepting a plea, the trial court must determine on the record that it is voluntary and intelligent, *Edmonds,* 189 S.W.3d at 565.

Porter acknowledges the prosecutor has broad discretion to plea bargain but argues the Commonwealth exceeded its authority when it placed conditions on the initial, more favorable plea offer in order to protect the confidential informant. Such action, Porter maintains, violated his right to due process, which, in a criminal trial, " 'is, in essence, the right to a fair opportunity to defend against the State's accusations.' " *Beaty v. Commonwealth,* 125 S.W.3d 196 (Ky.2003) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Clearly, the government possesses a privilege to

refuse to disclose an informant's identity. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Kentucky Rule of Evidence (KRE) 508. The privilege is limited, however, by the "fundamental requirements of fairness." *Roviaro*, 353 U.S. at 60, 77 S.Ct. 623. Generally, in determining whether disclosure is warranted, the trial court considers the facts of each case and balances "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. 623. In Kentucky, KRE 508 dictates both a privilege for informers and exceptions to the privilege in both criminal and civil cases.[5] On balance, we find in this case the "counsel-only" condition did not violate Porter's due process rights, but rather was a valid exercise of prosecutorial discretion.

To begin with, the right to put forth a meaningful defense usually involves rights pertinent to trial. For example, the right to a defense includes the right to present evidence at trial of an alleged alternative perpetrator, *Beaty*, 125 S.W.3d at 204; the right to offer the testimony of witnesses and compel their attendance at trial, *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); and the right to confront the prosecution's witnesses and challenge their testimony at trial, *Chambers*, 410 U.S. 284, 93 S.Ct. 1038; *Pennsylvania v. Ritchie*, 480 U.S. 39, 41, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("the right to confrontation is a *trial* right") (emphasis in original). Similarly, cases that require an informant's identity be disclosed in the interest of due process involve disclosure at trial. *See, e.g., Roviaro* 353 U.S. 53, 77 S.Ct. 623; *Burks v. Commonwealth*, 471 S.W.2d 298 (Ky.1971).

■ By contrast, in this case, Porter objects to the Commonwealth conditioning disclosure of the confidential informant's identity prior to trial, during plea bargain-

---

**5.** The rule provides, in relevant part, as follows regarding criminal cases:

(a) General rule of privilege. The Commonwealth of Kentucky and its sister states and the United States have a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

(b) Who may claim. The privilege may be claimed by an appropriate representative of the public entity to which the information was furnished.

(c) Exceptions:
(1) Voluntary disclosure; informer as a witness. No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed by the holder of the privilege or by the informer's own action, or if the informer appears as a witness for the state. Disclosure within a law enforcement agency or legislative committee for a proper purpose does not waive the privilege.

(2) Testimony on relevant issue. If it appears that an informer may be able to give relevant testimony and the public entity invokes the privilege, the court shall give the public entity an opportunity to make an in camera showing in support of the claim of privilege. The showing will ordinarily be in the form of affidavits, but the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavits. If the court finds that there is a reasonable probability that the informer can give relevant testimony, and the public entity elects not to disclose this identity, in criminal cases the court on motion of the defendant or on its own motion shall grant appropriate relief, which may include one (1) or more of the following:
(A) Requiring the prosecuting attorney to comply;
(B) Granting the defendant additional time or a continuance;
(C) Relieving the defendant from making disclosures otherwise required of him;
(D) Prohibiting the prosecuting attorney from introducing specified evidence; and
(E) Dismissing charges.

ing. However, trial courts are not required to disclose the identity of a confidential informant at a pretrial hearing. *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[A]lthough the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial ... it has never been held to require the disclosure of an informant's identity at a suppression hearing."); *United States v. Cummins,* 912 F.2d 98, 103 (6th Cir.1990) ("Due process does not require the disclosure of an informant's identity at a suppression hearing").[6] Further, the United States Supreme Court has held the process due at a suppression hearing may be less demanding and elaborate than the protections due at the trial itself. *Raddatz,* 447 U.S. at 669, 100 S.Ct. 2406. The Court recently engaged in this analysis, distinguishing the significance of certain rights when they manifest at trial as opposed to when they manifest prior to trial, to determine that defendants do not have the right to receive impeachment information relating to informants during plea' bargaining. *United States v. Ruiz,* 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).

*Ruiz*'s predecessor, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), established that prosecutors must disclose to defendants favorable evidence that is "material either to guilt or to punishment." Such evidence includes impeachment evidence, *i.e.,* evidence that could be used to impeach a state's witness by showing prejudice or bias. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In *Ruiz,* the Supreme Court for the first time considered the applicability of *Brady,* specifically the disclosure of impeachment information, to plea bargaining. 536 U.S. at 625, 122 S.Ct. 2450. Ruiz was arrested for possession of a controlled substance and offered a "fast track" plea bargain, in which the defendant waived the right to receive impeachment information in return for the government recommending a significantly reduced sentence. *Id.* When Ruiz refused to waive her right to impeachment information, the government withdrew the offer and indicted Ruiz for unlawful drug possession. *Id.* Ruiz eventually pled guilty and received the standard sentence under the sentencing guidelines. *Id.* at 626, 122 S.Ct. 2450. The United States Supreme Court held prosecutors are not required "before entering into a binding plea agreement with a criminal defendant, to disclose impeachment information relating to any informants or other witnesses." *Id.* at 625, 122 S.Ct. 2450. The Supreme Court explained the right to impeachment information is "a right that the Constitution provides as part of its basic "fair trial" guarantee," and thus "impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary." Id.* at 628–29, 122 S.Ct. 2450 (emphasis in original).

While Porter certainly has the right to put forth a defense, this due process right sounds more loudly at trial than at pretrial proceedings, including at plea bargaining.

---

6. We understand suppression hearings are different from plea bargains but find sufficient basis for adopting the concept that due process concerns are most critical at trial. Most importantly, "plea bargaining takes place only under judicial supervision, an important check against abuse." *Town of Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (O'Connor, J., concurring). Also defending against abuse are the safeguards, mentioned above, put in place to protect a defendant during plea bargaining, such as the requirements that the defendant receive counsel and that the plea be knowing and voluntary.

Here, the Commonwealth was not required to disclose the informant's identity at this stage of the process and Porter did not have the right to receive impeachment information about the informant during plea bargaining. Porter's claim that the condition imposed by the Commonwealth violated his right to due process is further weakened by the fact that prosecutors can require defendants to waive certain rights as part of a plea offer.

 As noted above, there is no constitutional right to plea bargain and the prosecutor decides whether to plea bargain or proceed to trial. *Weatherford*, 429 U.S. at 561, 97 S.Ct. 837. Where the prosecutor decides to engage in plea bargaining, he is given wide latitude to determine the terms of the plea offer. "[T]he theoretical basis for all plea bargaining is that defendants will agree to waive their constitutional rights" and thus "[a] condition insisted on by the State that requires a defendant to give up a constitutional right does not, by itself, violate due process." *State v. Moen*, 150 Wash.2d 221, 76 P.3d 721, 725 (2003). By pleading guilty, the defendant inherently waives the right to a fair trial, the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the right to a trial by jury. *Ruiz*, 536 U.S. at 628, 122 S.Ct. 2450. In addition to this inherent relinquishment of rights, the state may impose conditions that require the defendant give up additional rights. "The most basic rights of criminal defendants are ... subject to waiver," *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), and "any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily," *Johnson v. Commonwealth*, 120 S.W.3d 704, 706 (Ky.2003) (quoting *United States v. Ashe*, 47 F.3d

770 (6th Cir.1995)). Thus, courts have held a defendant may waive the application of an evidentiary rule that prohibits admission of statements made during plea negotiations, *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); the right to a double jeopardy defense, *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); the right to file a 42 U.S.C. § 1983 action, *Rumery*, 480 U.S. 386, 107 S.Ct. 1187 (1987); the Sixth Amendment right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); the right to appeal, *Weatherford v. Commonwealth*, 703 S.W.2d 882 (Ky.1986); and the right to receive jail-time credit pursuant to KRS 532.120(3), *Propes v. Commonwealth*, 257 S.W.3d 119 (Ky.App.2008).

More aggressive exercises of prosecutorial discretions have also been upheld. In *Bordenkircher v. Hayes*, 434 U.S. 357, 358, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the United States Supreme Court held due process was not violated where, during plea bargaining, the Commonwealth's Attorney threatened to indict the defendant on much more serious charges if the defendant refused to accept an offer of five years and "save the court the inconvenience and necessity of a trial." *Id.* When the defendant refused to so plead, the Commonwealth's Attorney carried out his threat and the defendant ultimately received life imprisonment after trial on the more serious charges. *Id.* The Commonwealth's Attorney later admitted the sole reason for threatening the more serious indictment was to discourage the respondent from exercising his right to a trial. *Id.* The United States Supreme Court held the plea offer did not violate the Due Process Clause but rather was a legitimate exercise of prosecutorial authority, in which the Commonwealth's Attorney "no more than openly presented the defendant with the unpleasant alternatives of forgo-

ing trial or facing charges on which he was plainly subject to prosecution." *Id.* at 365, 98 S.Ct. 663.

Conditioning a favorable plea deal on Porter waiving his personal right to part of discovery may have put Porter in the difficult position of choosing between his rights and a favorable reduced sentence, but "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive, such a right, is invalid." *Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). As these cases illustrate, it was permissible for the Commonwealth to offer Porter a very favorable plea deal in exchange for waiver of his right to view the video. The imposition of difficult choices is "an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668. Further, if the prosecutor's actions in *Bordenkircher* were permissible when the prosecutor admitted his sole motivation was to get the defendant to forego his right to a trial, so much more are the prosecutor's actions permissible in this case where the prosecutor was motivated by a legitimate concern for the informant's safety and the integrity of ongoing cases.

Unquestionably, the Commonwealth and the public have an interest in protecting confidential informants, who are important assets of effective law enforcement. So significant is this interest that, as noted above, the law accords a privilege to the state to withhold the identity of its informants, a privilege Kentucky codified in KRE 508. The "privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro,* 353 U.S. at 59, 77 S.Ct. 623. When the Commonwealth is required to disclose the identity of its informants, it not only loses a valuable asset of law enforcement but also compromises the safety of the informant and jeopardizes pending investigations. Denying the Commonwealth the ability to condition a plea on maintaining an informant's anonymity could have the unfavorable result of causing the Commonwealth to forego plea bargaining in those cases and, instead, expend significant time and resources on a trial.

Weighing further in favor of the imposition of the condition is the fact that Porter's counsel was able to view the video and relate its contents, *sans* the informant's identity, to Porter. Thus, both Porter and his counsel were aware of the evidence, able to evaluate the case against Porter and make an informed decision regarding whether or not to accept the plea deal. Though Porter himself did not know the name of the informant, his counsel learned the informant's identity from the video and could have investigated the informant's credibility and any possibility for impeachment, and then adequately counseled Porter on the best course of action. Of course Porter would like to have first-hand knowledge of all the evidence against him, but defendants are simply not entitled to such information. "There is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *Agurs,* 427 U.S. at 106, 96 S.Ct. 2392. Considering a similar situation, this Court previously found no error where the trial court admitted evidence that was known to defense counsel but not to the defendant. *Berry,* 782 S.W.2d 625. In *Berry,* the defendant objected to the introduction of a photopak identification on the grounds that he had never before seen the photographs. *Id.* The Court found no error because the evidence was not exculpatory and, prior to trial, "defense counsel had the opportunity to look at the photos,

discover when the identification took place, how much time was involved, what happened during the identification process and who was present. The evidence of the photopak could not have changed the defense of Berry." *Id.* at 627. In this case, defense counsel's complete knowledge of the contents of the video was sufficient for Porter to be able to prepare a defense.

Our decision herein is consistent with similar cases from other jurisdictions. In *State v. Moen,* 76 P.3d at 721, the Supreme Court of Washington held the prosecutor's policy of refusing to plea bargain with criminal defendants who obtained the identity of an informant in a related civil action did not violate due process. The police arrested Moen after he sold drugs to a confidential informant and, during the sting, seized several pieces of Moen's personal property, for which the police later sought forfeiture. *Id.* In contesting the forfeiture action, Moen requested the name of the confidential informant and was told that, if he insisted on learning the informant's identity, the prosecutor would not plea bargain on any related felony charges. *Id.* Moen insisted on disclosure and, when he was later indicted on criminal charges, the prosecutor accordingly refused to plea bargain. *Id.* Moen claimed the State's policy constituted governmental misconduct that prejudiced his right to a fair trial and chilled his right to obtain discovery in the civil case, thus violating due process. *Id.* The court acknowledged there are limits on a prosecutor's broad authority to plea bargain but found the prosecutor's policy therein to be a valid exercise of its authority. *Id.* at 723–25. The *Moen* court found that, while the State's policy may deter a defendant from compelling disclosure of a confidential informant's identity, it was neither retaliation for a defendant exercising his right to discovery nor intended to convey an advantage in a civil proceeding. Rather, the policy was properly motivated by the State's significant interest in protecting informants and, as such, did not violate due process. *Id.* at 725.

Similarly, the court in *People v. Moore,* 345 Ill.App.3d 1043, 281 Ill.Dec. 630, 804 N.E.2d 595 (2003), held the defendant's due process rights were not violated where the prosecutor had a policy of refusing to plea bargain with defendants who insisted on learning the identity of a confidential informant. In *Moore,* the prosecutor informed the defendant that plea bargaining was contingent upon keeping the informant's identity confidential but the defendant, fully apprised of the consequences of his request, insisted on receiving the informant's name, *Id.* Following the precedent established by *Ruiz, i.e.,* conditioning a plea offer on protecting an informant's identity does not violate a defendant's constitutional right of due process, the Moore court upheld the prosecutor's conduct. *Id.* "Although an accused has the constitutional right to know the name of an informant who witnessed or participated in a criminal occurrence ... there is no constitutional right to information regarding an informant before plea bargaining." *Id.* at 599. The prosecutor's refusal to extend a plea bargain to the defendant upon disclosure of the confidential informant's identity was within the prosecution's discretion and did not implicate the defendant's right to due process. *Id.* Consistent with these cases and for the reasons previously discussed, we find the condition in this case did not violate Porter's due process rights, but rather was a valid exercise of prosecutorial discretion.

## IV. The Prosecutor's Actions Were Proper.

██ We recognize that the breadth of discretion our legal system vests in prosecutors carries with it the potential for both

individual and institutional abuse. *Bordenkircher*, 434 U.S. at 365, 98 S.Ct. 663. However, we do not find any abuse in the course of conduct engaged in by the prosecutor in this case. The prosecutor timely complied with the court's discovery order and informed Porter that it possessed a recording of the drug buys. The prosecutor did not try to conceal the existence of the video or prohibit Porter from viewing the video. The prosecutor acted within its discretion when it imposed a reasonable condition on the first plea deal in order to address a legitimate interest. The Commonwealth made the details of the plea deal, including the existence and effect of this condition, clear from the outset. Though the condition may have required Porter to make a difficult decision, there is nothing improper in the government exerting pressure on defendants to plead guilty and abandon their fundamental rights in exchange for a favorable reduced sentence. *Corbitt*, 439 U.S. at 219, 99 S.Ct. 492. In addition, Porter was given ample time to consider the plea offer and he had the benefit of counsel, which mitigates the potential for prosecutorial abuse. "Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation." *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. 663. Moreover, the second plea offered by the Commonwealth after Porter insisted it disclose the identity of the informant was still favorable to Porter: twenty years for all charges was the minimum sentence Porter could have received had he been found guilty on all counts at trial.

## V. The Commonwealth Weed Not Reoffer the Original Plea Deal.

■ Porter insists the only fair resolution in this case is for this Court to require the Commonwealth to reoffer the twelve years from the initial plea deal. However, Porter does not have the right to a previously-offered plea deal. The prosecution decides whether to engage in plea bargaining or proceed to trial and is not required to reoffer a rejected or withdrawn plea offer. *United States v. Wheat*, 813 F.2d 1399 (9th Cir.1987), aff'd 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Reyes*, 764 S.W.2d 62; *Cope v. Commonwealth*, 645 S.W.2d 703 (Ky.1983). Porter was aware of the condition attached to the plea and, by demanding to see the video, chose to forego the first plea offer. The Commonwealth need not reoffer the same favorable deal it originally extended.

## CONCLUSION

The trial court did not abuse its discretion when it denied Porter's motion to withdraw his guilty plea after considering the record and finding the plea was voluntary. The Commonwealth properly complied with discovery when it disclosed the existence of an audio and video compact disc of the drug transactions and made those recordings-available to the defense. Further, conditioning the first plea offer on protecting the confidential informant's identity did not violate Porter's right of due process, but rather was a proper exercise of the prosecutor's plea bargaining authority. Finally, the prosecutor is not required to reoffer a previously rejected plea deal. For these reasons, the Judgment and Sentence on Plea of Guilty of Marion Circuit Court is affirmed.

MINTON, C.J.; CUNNINGHAM, SCHRODER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., concurs in result only.