# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000602-MR

MICHAEL ANDREW HARDY                        APPELLANT

ON APPEAL FROM WARREN CIRCUIT COURT
V.           HONORABLE STEVE ALAN WILSON, JUDGE
NO. 15-CR-00047

COMMONWEALTH OF KENTUCKY               APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

On November 21, 2014, Appellant, Michael Andrew Hardy, began drinking whiskey early in the day. Hardy nearly rear-ended a friend's vehicle while following her to her family's home later that day. The friend directed him to park his Jeep Wrangler in a grocery store parking lot and ride the rest of the way with her. Hardy drank whiskey throughout the day at his friend's house.

When Hardy was ready to leave, his friend and her husband attempted to convince Hardy to spend the evening at their residence. However, Hardy was persistent. He insisted that he would get a ride home, rather than drive. Hardy's friend begrudgingly drove him back to the grocery store parking lot. He assured his friend that he would be receiving a ride home from that location.

Instead, Hardy got into his vehicle and tried to drive himself home. Several witnesses saw Hardy's vehicle speeding down the road with its emergency flashers blinking, passing other drivers in a dangerous manner. He nearly caused a head-on collision with one witness, who testified that Hardy swerved to avoid rear-ending a slower driver and crossed into the witness's path. Another witness testified that she pulled her vehicle aside to the shoulder to avoid being rear-ended by Hardy.

Shortly after those narrow misses, Hardy rear-ended a Miata driven by the victim, Arthur "Jeremy" Pryor. Pryor was killed. At the scene, Hardy could not recall the collision with Pryor and thought he had struck a tree. Hardy admitted to first responders that he had been drinking and had taken the antidepressant drug Seroquel. His blood alcohol content was .190.

Hardy was subsequently indicted and tried for: one count of wanton murder; three counts of wanton endangerment in the first degree; one count of criminal mischief in the first degree; and one count of driving while intoxicated. At trial, the Commonwealth offered witnesses who described seeing Hardy's vehicle speed by with its emergency flashers blinking just before the fatal accident.

No one witnessed the actual collision—only its aftermath and Hardy's pre-collision speeding. Hardy did not remember what caused the collision. Nevertheless, the collision analysis showed that Hardy rear-ended Pryor's vehicle. An accident reconstructionist testified that Hardy struck the victim's vehicle from the left, rear corner. Further analysis of the event data recorder

2

(EDR) from Hardy's vehicle showed that he was driving at 90 miles per hour in a 30-mile-per-hour speed zone a tenth-of-a-second before the crash. The EDR also showed that Hardy did not apply the brakes pre-impact. Nor were there any visible signs of pre-impact braking on the roadway.

Aside from a failed attempt to enter the victim's toxicology report, Hardy offered no proof to refute that he had rear-ended Pryor at an excessive speed, causing Pryor's death.

A Warren Circuit Court jury convicted Hardy of wanton murder, three counts of wanton endangerment, criminal mischief, and driving while intoxicated. Based upon the jury's recommendation, the trial court sentenced him to a total of 20 years' imprisonment. Hardy raises three issues on appeal as a matter of right. Ky. Const. § 110(2)(b).

### Exclusion of Victim's Toxicology Report

For his first assignment of error, Hardy argues that the trial court wrongfully excluded the victim's toxicology report. We review alleged evidentiary errors for an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

A postmortem toxicology report showed the presence of benzodiazepines and cannabinoids in the victim's blood and urine. The Commonwealth successfully argued that this toxicology evidence was irrelevant because there was no proof that the victim was driving improperly. The trial court ruled that Hardy had to show that the substances found during the toxicology report

would have affected Pryor's driving and contributed to the collision before the report would be deemed relevant.

Hardy did not meet the trial court's established burden for proving the evidentiary value of the toxicology report. The physician who performed the autopsy affirmed that the level of illicit substances found in the victim's body did not show that the victim was impaired. Hardy did not provide proof that the victim's driving was impaired at the time of the collision, nor that the victim's driving was generally impaired prior thereto.

We must determine whether the evidence offered was relevant, and whether its substantive value substantially outweighed its prejudicial effect. KRE 402; KRE 403. Relevant evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401.

Under KRE 403, prejudicial evidence should be admitted if it is "evidence of some logical, qualifying information [that] enhance[s] the proffered evidence beyond speculative, farfetched theories that may potentially confuse the issues or mislead the jury." *Gray v. Commonwealth*, 480 S.W.3d 253, 268 (Ky. 2016). Stated another way, a defendant may not "present unsupported theories . . . [that] invite the jury to speculate as to some cause other than one supported by the evidence." *Davenport v. Commonwealth*, 177 S.W.3d 763, 772 (Ky. 2005).

Here, Hardy offered no proof that Pryor's conduct had caused the collision. All evidence offered by the prosecution supported that Hardy's

4

wanton conduct had led him to rear-end the victim's vehicle. There was no evidence offered to support that the victim contributed to the accident's occurrence in any way. Evidence of illicit substances in the victim's body was not relevant to Hardy's charges, and so would have unduly prejudiced the victim's character. It would only have served to confuse the jury about the issues they were to decide in this case. Thus, we hold that the trial court properly excluded the victim's toxicology report.

## Selective Prosecution Claim

For his second assignment of error, Hardy claims that the Commonwealth used "selective prosecution" by not extending a plea offer to him. Hardy alleges that the Commonwealth would have made a plea deal with other similarly-situated defendants.

We have stated that "[t]here is no constitutional right to plea bargain and it is within the prosecutor's discretion to decide whether to plea bargain or go to trial." *Porter v. Commonwealth*, 394 S.W.3d 382, 388 (Ky. 2011) (internal citation omitted). While this broad prosecutorial discretion is "subject to constitutional constraints," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)), there have been no valid constitutional arguments proffered.

As for Hardy's Fourteenth Amendment and Eighth Amendment claims, they are meritless. Similarly-situated drunk drivers are not a protected class. Likewise, similarly-situated defendants, sentenced according to statutory law, are not *per se* considered subject to cruel or unusual punishment.

Certainly, it was within the Commonwealth's prosecutorial discretion to choose not to make a plea deal with Hardy. *Porter*, 394 S.W.3d at 388. "The mere fact that *some* other putative offenders are not prosecuted does not make a case of selective or arbitrary enforcement." *Johnson v. Commonwealth*, 864 S.W.2d 266, 275 (Ky. 1993) (original emphasis). Therefore, Hardy's meritless claim of selective prosecution fails.

### Hardy's Recorded Statement "So What's That Mean For Me?"

Lastly, Hardy claims that the trial court erred when it allowed a portion of his recorded, post-collision statement to be played as a rebuttal to his testimony. In response to learning that the victim he struck had been killed, Hardy asked an interrogating officer, "So what's that mean for me?"

Even though the trial court had initially ruled this post-collision statement should be suppressed, the court changed its ruling and allowed a portion of Hardy's statement in on cross-examination. The court reasoned that Hardy's remorseful testimony was inconsistent with his "so what's that mean for me" attitude the night of the accident and was relevant to his state of mind. Hardy claims that this recorded statement did not meaningfully rebut his testimony expressing remorse for Pryor's death and only served to prejudice him to the jury.

Proof relating to Hardy's remorse, or lack thereof, was relevant to determining whether Hardy wantonly operated his vehicle "under circumstances manifesting extreme indifference to human life." KRS 507.020(1)(b).

6

Although the statement itself may have been prejudicial, the mere fact that certain evidence is prejudicial does not automatically merit its exclusion under KRE 403. *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012). The only valid argument for undue prejudice would have been made under the rule of completeness. *See Sykes v. Commonwealth*, 453 S.W.3d 722, 726 (Ky. 2015); KRE 106.

However, Hardy's counsel did not object to his recorded statement as an incomplete statement under KRE 106, or argue that the full statement be played instead of the "snippet" Hardy complained of in his brief. Thus, any potential argument Hardy may have had under KRE 106 was not properly preserved. Furthermore, even if Appellant's argument had been framed within the context of KRE 106, we cannot say that the trial court abused its discretion. RCr 9.24.

## Conclusion

For the foregoing reasons, we hereby affirm the decision of the Warren Circuit Court.

All sitting. All concur.

7

COUNSEL FOR APPELLANT:

Daniel Jay Canon
CLAY, DANIEL, WALTON, ADAMS, PLC

Mark Hall
MARK G. HALL ATTORNEY, PLLC


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General

8