# IMPORTANT NOTICE

# "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: JUNE 25, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0536-MR

MICHAEL ELMORE                                                    APPELLANT

ON APPEAL FROM OLDHAM CIRCUIT COURT
V.               HONORABLE JERRY CROSBY, II, JUDGE
NO. 23-CR-00100

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Michael Anthony Elmore moved to withdraw his guilty plea before sentencing. After holding an evidentiary hearing at which Elmore and the attorney who represented him testified, the trial court denied Elmore's motion. He now appeals as a matter of right.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2023, an Oldham County grand jury indicted Elmore on multiple charges: first degree rape, first degree burglary, kidnapping (adult), first degree strangulation, intimidating a participant in the legal process, fourth degree assault (dating violence), third degree terroristic threatening, and second degree criminal mischief. These charges carried a maximum prison term of sixty years.

The indictment alleged Elmore went to A.S.'s residence late at night on March 4, 2023, after she had told him not to come, forced a window open by breaking plastic clips, entered, took A.S.'s phone, restrained her, and placed his hand over her nose, mouth, and throat while issuing threats. After Elmore left, A.S. went to the police.

The pretrial process included mediation. Hon. Julie Barr represented Elmore and participated in mediation that produced a negotiated plea. Elmore agreed to plead guilty to second degree burglary and first degree strangulation, with the Commonwealth recommending ten years on each count to run consecutively (a total of twenty years), and dismissing the remaining charges—including rape and kidnapping.

On April 16, 2024, the trial court conducted a *Boykin* colloquy.[1] Elmore stated he had discussed the case with counsel, understood the constitutional rights he was waiving, and was satisfied with counsel's advice. He confirmed his plea was free, knowing, voluntary, and intelligent. He admitted breaking the window clips at A.S.'s residence, entering through the window, and placing his hand over the victim's mouth in a way that impaired her breathing. The trial court accepted the plea, noting Elmore's allocution satisfied the elements of the offenses.

Before sentencing, Elmore retained new counsel and moved to withdraw his plea, claiming his prior counsel did not advise him of lesser included

---

[1] Boykin v. Alabama, 395 U.S. 238 (1969).

offenses (specifically criminal trespass), did not investigate or advise him regarding extreme emotional disturbance (EED), entered the plea with incomplete discovery, failed to adequately represent him at mediation, and did not warn him about anticipated statutory changes under House Bill 5 that could affect parole eligibility for first degree strangulation. He asserted that, but for these errors, he would have gone to trial.

The trial court held an evidentiary hearing on August 15, 2024. Elmore testified that at mediation Ms. Barr lacked an updated summary of facts and that, after the mediator spoke with the prosecutor, he was told to "pick two" charges he thought he was guilty of—an instruction he says reinforced his belief that entering through a window necessarily meant burglary. He asserted he believed he had permission to enter because he and A.S. were "back together," and he lacked any intent to commit a crime upon entry, and alleged his attorney did not connect this to potential defenses or lesser included offenses at trial.

Elmore testified he was never advised about criminal trespass, did not understand the difference between trespass and burglary, and did not know he could ask a jury to consider a lesser offense. He further said counsel did not review the "meat and bones" of a jury trial or possible jury instructions, leaving him with the belief he had no viable trial path and therefore no leverage in mediation.

Regarding mental health, Elmore reported a history of PTSD, bipolar disorder, and depression. Despite knowing this, counsel did not obtain his

3

medical records, did not seek a mental health evaluation, and did not discuss EED—which he believed could have been relevant to his conduct. He also stated discovery was incomplete at the time of his plea, pointing to DNA information first disclosed at the August 15, 2024, hearing that had not been available to him or counsel beforehand.

Elmore described a misunderstanding between probation and shock probation, saying he believed shock probation would be available and that the Commonwealth would not oppose it. He testified he would not have signed the mediation agreement had he known otherwise. Finally, he testified that counsel did not warn him about House Bill 5, and he said he would have insisted on trial had he known that first degree strangulation could carry 85% parole eligibility.

His prior attorney testified at the hearing. Her testimony conflicted with Elmore's portrayal in several respects. She testified she discussed the elements of the charged offenses with Elmore and reviewed evidence with him, including photographs of the broken window clips and whether the evidence sufficed to prove burglary. She acknowledged she did not specifically recall discussing criminal trespass or using lesser included language in a jury trial context. However, she maintained she had done the necessary investigation for mediation and that "nothing was left unturned" for purposes of securing a plea.

Barr acknowledged she knew Elmore had PTSD but did not obtain his records, did not secure a mental health expert, and did not discuss EED with him. She could not recall whether she had provided discovery to Elmore prior

4

to the plea and that certain discovery—including DNA—was disclosed later. Even so, Barr testified the case was months from trial at the time of the plea, that she was not then ready for trial, and that she did not discuss jury instructions because the case was in negotiation mode.

She believed she had exhausted what was needed for mediation, which produced a favorable offer. She informed the mediator that Elmore was habitually allowed at A.S.'s residence, though she did not present EED, criminal trespass, or license to enter as formal defenses during mediation. She conceded she did not discuss House Bill 5 with Elmore. While she knew that it could affect punishment for strangulation, it was pending during mediation and when Elmore pled guilty.

After the hearing, the trial court found that Elmore's plea was voluntary under the totality of the circumstances, relying in part on his *Boykin* declarations and allocution admitting conduct satisfying offense elements. The court also found no ineffective assistance of counsel, concluding Barr discussed the charged offenses and elements and secured a favorable plea dismissing serious counts and reducing burglary from first to second degree. The court concluded that Elmore failed to show he would have insisted on trial but for counsel's alleged deficiencies.

The court denied Elmore's motion to withdraw his plea and entered judgment consistent with the plea agreement. Elmore is appealing the denial of his motion to withdraw the guilty plea.

## II. ANALYSIS

### A. The Standard for Withdrawing a Guilty Plea Under RCr 8.10 When the Defendant Alleges Ineffective Assistance of Counsel.

Kentucky Rules of Criminal Procedure (RCr) 8.10 provides that, "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." A motion to withdraw a guilty plea is generally addressed to the sound discretion of the trial court. However, that discretion exists only after the court determines that the plea was entered voluntarily. *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007); *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002). If the plea was involuntary, the defendant is entitled to withdrawal as a matter of right and the trial court "must" grant the motion. *Porter v. Commonwealth*, 394 S.W.3d 382, 385–86 (Ky. 2011).

Because a guilty plea waives several fundamental constitutional rights, due process requires that a valid plea be knowing, intelligent, and voluntary. *Haight v. Commonwealth*, 760 S.W.2d 84, 87–88 (Ky. 1988) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). Likewise, the Due Process Clause demands an affirmative, on the record showing of voluntariness before the plea may be accepted. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 565 (Ky. 2006).

Where a defendant moves to withdraw a guilty plea prior to judgment and alleges that the plea was entered involuntarily, the trial court must conduct a hearing to determine voluntariness. *Williams*, 229 S.W.3d at 51; *Porter*, 394 S.W.3d at 385. If, following that hearing, the court finds the

plea involuntary, the court has no discretion and must grant the motion. *Porter*, 394 S.W.3d at 385–86.

Voluntariness is assessed under the totality of the circumstances surrounding the plea. *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001). The trial court is in the best position to determine whether the defendant exhibited reluctance, misunderstanding, involuntariness, or incompetence. *Porter*, 394 S.W.3d at 386. A plea that is the actual product of threats or promises is involuntary. *Johnson v. Commonwealth*, 412 S.W.3d 157, 164 (Ky. 2013). Statements made by a defendant under oath during the plea colloquy carry a strong presumption of verity, and they are significant evidence of voluntariness. *Edmonds*, 189 S.W.3d at 569. Because voluntariness is a factual determination, appellate courts review a trial court's finding for clear error, upholding the ruling where supported by substantial evidence. *Porter*, 394 S.W.3d at 386; *Commonwealth v. Pridham*, 394 S.W.3d 867, 875 (Ky. 2012).

If the trial court concludes that the defendant entered the plea knowingly, intelligently, and voluntarily, then the decision whether to allow withdrawal rests within the court's sound discretion. *Greene v. Commonwealth*, 475 S.W.3d 626, 630 (Ky. 2015). A denial of such a motion is reviewed for abuse of discretion, which occurs when the ruling is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Edmonds*, 189 S.W.3d at 570; *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

When a defendant challenges the voluntariness of a guilty plea on grounds of ineffective assistance, the trial court must "juxtapose" the presumption of voluntariness inherent in a proper plea colloquy with the analysis of *Strickland v. Washington*, 466 U.S. 668 (1984). *Bronk*, 58 S.W.3d at 486-87. This inquiry involves two components. The court first evaluates whether counsel's performance fell outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 687; *Commonwealth v. Tigue*, 459 S.W.3d 372, 391 (Ky. 2015). The defendant must show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Tigue*, 459 S.W.3d at 391. The defendant must show that rejecting the plea bargain would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012).

**B. Elmore Entered His Plea Voluntarily.**

The record supports the trial court's finding that Elmore's plea was voluntary. Elmore participated in a full *Boykin* colloquy, affirming that he had discussed his case with counsel, understood the constitutional rights he was waiving, was satisfied with counsel's advice, and was entering his plea freely, knowingly, and intelligently. He then admitted facts satisfying the offense elements—breaking the window clips to gain entry and placing his hand over the victim's mouth in a manner that impeded breathing. The trial court's written findings recite these sworn admissions, expressly concluding the plea

8

was made "freely, voluntarily, intelligently, and knowingly," and that Elmore "was making no claim of innocence."

Elmore's post plea assertions of misunderstanding do not overcome the "strong presumption of verity" attached to solemn declarations in open court, particularly where, as here, the trial court observed his demeanor and made specific findings that he was satisfied with the mediation process, had the opportunity to discuss the case and his rights with counsel, and entered his plea because he was guilty. On this record, the voluntariness determination is supported by substantial evidence and is not clearly erroneous.

## C. Elmore's Counsel Was Not Ineffective.

### 1. Elmore failed to establish deficient performance of counsel.

Having concluded that the trial court did not clearly err in finding Elmore's plea voluntary, we next review the court's rejection of his ineffective assistance claims for abuse of discretion. Under this standard, we do not reweigh testimony or second guess credibility determinations. Rather, we assess whether the court's ultimate ruling on counsel's performance was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Greene*, 475 S.W.3d at 630; *Edmonds*, 189 S.W.3d at 570.

Elmore argues counsel's actions were deficient in four principal respects: (1) she failed to advise him about the lesser included offense of criminal trespass; (2) she failed to investigate a potential defense of EED or advise him about the impact of his mental health issues; (3) she advised him to enter into the plea agreement knowing that discovery was incomplete and she was

unprepared for trial; and (4) she failed to warn him about potential parole eligibility consequences under House Bill 5.

The evidence supports the trial court's rejection of each theory. As to the burglary elements and lesser included offenses, the court credited counsel's testimony that she discussed the elements of the charged offenses with Elmore, reviewed photographs of the broken window clips, and evaluated whether the evidence sufficed to prove burglary. Counsel did not specifically recall using the label "criminal trespass," but the court found she fulfilled her obligation to explain the charges and legal framework relevant to mediation. Given this finding, the court reasonably concluded that counsel's performance did not fall outside the wide range of professionally competent assistance.

Regarding considering EED and conducting a mental health investigation, the trial court accurately observed that EED is legally unavailable as a defense to burglary or first degree strangulation. Given that Elmore pled to those offenses and the remaining counts—including rape and kidnapping—would not have been mitigated by EED, the court acted well within its discretion in determining that counsel's failure to pursue an inapplicable defense was not deficient. Counsel's lack of broader mental health inquiries, while not exhaustive, did not render her mediation focused representation constitutionally ineffective.

As to discovery and trial preparation, counsel testified that additional discovery (including DNA evidence) surfaced after the plea, that she was not fully prepared for trial at the mediation stage, and that she did not discuss jury

10

instructions because the case remained in negotiation posture. The trial court accepted her explanation that the case was months from trial and that she had conducted the investigation necessary to engage in mediation and secure a favorable plea. On this record, the court did not abuse its discretion by concluding that counsel's performance during mediation was reasonable.

Finally, the trial court correctly determined that counsel's failure to warn about House Bill 5 did not constitute deficient performance. House Bill 5 became effective months after the plea, and it was unclear whether it would apply to him. Counsel's performance must be evaluated at the time advice was given, and the court appropriately concluded that her failure to anticipate how a future legislative change would affect Elmore did not fall below professional norms.

### 2. Elmore failed to establish prejudice.

The trial court also found that Elmore failed to establish *Strickland's* prejudice prong—a finding we review for abuse of discretion. Under *Hill v. Lockhart*, Elmore had the burden to show a reasonable probability that, but for counsel's alleged errors, he would have insisted on going to trial, and that doing so would have been rational under the circumstances. 474 U.S. at 58–59.

The trial court concluded that Elmore's claim of prejudice was not persuasive, emphasizing that he faced multiple Class B felonies—including rape and kidnapping—and that counsel secured a plea reducing burglary from first to second degree and dismissing the most serious charges. The resulting

11

twenty-year sentence on two Class C felonies was a significantly favorable resolution compared to the sixty-year sentence he risked receiving had he gone to trial, been convicted, and sentenced to the maximum term. Additionally, with the dismissal of the rape charge, Elmore was not designated a sex offender and avoided all the collateral impacts that follow that designation.

The court also relied on Elmore's answers at the plea hearing. Elmore acknowledged breaking the window clips, entering through the window, and restraining the victim in a manner that impeded her breathing, which provided a factual basis for his guilty plea. He affirmed satisfaction with counsel and expressed no reluctance to proceed. These facts reasonably undercut his later assertion that he would have rejected the plea and insisted on going to trial.

Elmore's claim regarding a trespass defense does not undermine the trial court's conclusion. The court found that, regardless of his claims about permission to enter, the surrounding conduct—taking the victim's phone, immediately restraining her, and placing his hand over her nose, mouth, and throat—supported an inference of criminal intent at entry or while remaining unlawfully. Given that evidence, the court was well within its discretion to conclude that knowledge of a lesser included trespass theory would not have made rejection of the plea a rational choice.

Nor did the trial court act unreasonably in rejecting Elmore's reliance on House Bill 5. House Bill 5 became effective after the plea, and the court properly recognized that post plea legislative change cannot retroactively create prejudice for a previously voluntary plea. Finally, because EED is legally

12

inapplicable to the charges driving the plea agreement, the trial court correctly determined that failure to pursue it could not have meaningfully influenced his decision to plead guilty.

The trial court's conclusion that Elmore failed to satisfy the prejudice prong of *Strickland* was supported by the record and fully consistent with the governing legal standards. It was not an abuse of discretion.

## III. CONCLUSION

Elmore entered a knowing, intelligent, and voluntary plea. He received effective assistance of counsel when pleading guilty. We affirm his conviction.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General