John Roscoe GARLAND, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000553–MR

Supreme Court of Kentucky.

RENDERED: FEBRUARY 19, 2015

Rehearing Denied May 14, 2015

COUNSEL FOR APPELLANT: Euva Denean Blandford, Dennis James Burke, Assistant Public Advocate, Department of Public Advocacy

COUNSEL FOR APPELLEE: Jack Conway, Attorney General of Kentucky, David Wayne Barr, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals

OPINION OF THE COURT BY JUSTICE VENTERS

Seeking post-conviction relief from a death sentence, Appellant John Roscoe Garland argued in the McCreary Circuit Court that he was deprived of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution, when, immediately after his trial, police officers acting in bad faith destroyed certain items of evidence, rendering them unavailable for DNA testing. Following an evidentiary hearing on the issue, the McCreary Circuit Court found that the officers had not acted in bad faith when the evidence was destroyed. The court denied Garland's request. Garland now appeals that ruling to this Court. For the reasons stated below, we conclude that Garland had previously abandoned his request to have those items of evidence tested by DNA analysis, and therefore, waived any complaint he may have about their unavailability for DNA testing. We also conclude that Garland failed to establish the officers acted in bad faith, and so we affirm the decision of the McCreary Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We begin by reviewing the procedural route this case has taken to reach this point. Garland was charged with three counts of murder for the 1997 slayings of

Jean Ferrier, Crystal Conaster, and Chris Boswell. Following a jury trial in the McCreary Circuit Court, he was convicted and sentenced to death on each count. We affirmed the convictions and the death sentences in *Garland v. Commonwealth,* 127 S.W.3d 529 (Ky.2003).

After his convictions were affirmed, Garland filed a motion in the circuit court to obtain DNA testing and analysis of certain evidentiary items pursuant to KRS 422.285, which permits a person convicted of murder and other specified crimes to request DNA testing of items "related to the investigation or prosecution ... that may contain biological evidence." Garland also invoked KRS 422.287, which permits persons "being tried for a capital offense" to obtain DNA testing and analysis of items of evidence. Specifically, Garland moved the court to submit, among other things, three evidentiary items for DNA testing and analysis: the hair recovered from Jean Ferrier's left hand; hair found on a broken Ferrier fingernail; and Jean Ferrier's fingernail clippings. The McCreary Circuit Court denied Garland's motion, and he appealed that ruling to this Court. *See Garland v. Commonwealth,* 2011 WL 2112497 (Ky.2011). (*Garland II* ). We reversed, and remanded the matter to the circuit court for an evidentiary hearing. Significantly, we specifically held the following:

> In his first *pro se* motion, Appellant specifically requested DNA testing, pursuant to KRS 422.285, of **the clump of hair in Jean Ferrier's hand and the possible hair under her fingernail.** Appellant's first motion also requested testing of a number of additional items, and raised additional grounds for DNA testing. **On appeal, however, Appellant now limits his argument to the two items previously mentioned,** and cites KRS 422.285 as the only statutory ground for testing. Therefore, **we need not address testing of the other items listed in Appellant's first motion, and will now consider whether the trial court erred in denying Appellant's motion for DNA testing of the two hair specimens** under KRS 422.285.

*Garland II,* at \*3. (emphasis added).

Our opinion concluded as follows:

> We affirm that part of the circuit court's judgment that denied testing of items evidence that Appellant has abandoned on appeal. As to Appellant's first appeal regarding his pro se motion for DNA testing and analysis of the clump of hair collected from Jean Ferrier's left hand, and the possible hair collected from Ferrier's fingernail clippings, the judgment of the McCreary Circuit Court is reversed, and the matter remanded for proceedings consistent with this opinion.

*Garland II,* at \*6.

Upon remand following our opinion, the circuit court conducted the evidentiary hearing. At the hearing, the court was informed that the two evidentiary items argued in the appeal, the "clump of hair in Jean Ferrier's hand" and the "possible hair under her fingernail" had been subjected to DNA testing. The analysis showed the clump of hair came from Chris Boswell, one of the other murder victims. The results of the hair found in Jean Ferrier's broken fingernail showed that one strand of hair came from Jean Ferrier and another strand came from Chris Boswell. The origin of the third strand was indeterminable, and was perhaps not even human hair. None of these discoveries exculpated Garland.

The evidentiary hearing also revealed that Jean Ferrier's fingernail clippings were not subjected to DNA testing because they had been discarded fourteen years earlier, immediately following the

trial, by Kentucky State Police (KSP) officers, Sgt. David Biggerstaff and Detective Ronnie Meadows.

Biggerstaff testified at the evidentiary hearing that he was the evidence supervisor at the time of the trial and that his duties included cataloging, storing, and disposing of evidence. According to Biggerstaff, KSP policy provided that items were deemed to have no "evidentiary value" if they were not introduced as evidence at trial. He said that it was standard KSP procedure at the conclusion of a trial to "process out" (i.e. destroy or return to their owners) items that had no "evidentiary value." Meadows also testified, largely echoing what Biggerstaff said regarding KSP policy and the processing of evidence. Meadows added that according to their policy, items introduced at trial were preserved and that items not introduced at trial, such as the Jean Ferrier fingernail clippings, were destroyed. It is worth noting that the loss of the fingernail clippings occurred despite the trial court's entry two years earlier of a "no-destruction" order. The trial court noted that the KSP was not on the distribution list for that order. Apparently, the KSP ordinarily documented the destruction of evidentiary items "processed out" at the end of a trial; however, no destruction form relating to the fingernail clippings was introduced at the hearing, and we find none in the record of the case.[1]

Biggerstaff and Meadows disclaimed any knowledge of the destruction of any mitigating or exculpatory evidence. Following the evidentiary hearing, Appellant moved the court for a new trial on the grounds that the KSP had acted in bad faith in destroying the fingernail clippings, thus depriving him of due process. The trial court denied that motion, finding that the destruction of the fingernail clippings "was not done by the officers, or any agent of the Commonwealth, in any bad faith." Citing to our decisions in *Collins v. Commonwealth,* 951 S.W.2d 569, 573 (Ky.1997), and *Moore v. Commonwealth,* 357 S.W.3d 470, 484–85 (Ky.2011), the court further found "[t]here is no evidence of any, and this Court finds that there was no willful, malicious or duplicitous motive to defeat or impair in any way the Defendant's due process rights by destroying the items in question, specifically but not limited to the fingernail clippings." Garland now appeals from the trial court's order denying his motion for a new trial.

## II. GARLAND WAIVED HIS RIGHT TO DNA TESTING OF THE FINGERNAIL CLIPPINGS

◼ Appellant waived his due process claim regarding the unavailability of the fingernail clippings and his inability to have them tested for DNA evidence because in the 2011 appeal (*Garland II*), he did not pursue his argument to have those items tested. As noted in the portion of the opinion quoted above, when Garland appealed the order refusing his request for DNA testing, he limited his claim to testing two hair specimens: "the clump of hair

---

1. A KSP evidence destruction form was presented at the hearing showing that police investigating the crimes had used a rape kit to collect potential evidence. Nothing relating to the rape kit was introduced into evidence at the trial. No sexual crimes were alleged in connection with the shootings. Appellant never requested to have the rape kit items tested for DNA. The destruction form was ostensibly signed by Meadows and Biggerstaff, but both officers denied signing it. Meadows and Biggerstaff said that someone else had signed their names to the form, possibly a KSP clerk. Appellant argued that this apparent forgery, otherwise unconnected to the fingernail evidence, indicated bad faith in the destruction of the fingernail clippings.

in Jean Ferrier's hand and the possible hair under her fingernail."

■ These items were DNA tested and analyzed and the results yielded no exculpatory evidence. While Appellant may have requested DNA testing of the fingernail clippings in his initial motions in the trial court, he failed to pursue such testing on appeal. Arguments not pursued on appeal are deemed waived. *Cook v. Popplewell,* 394 S.W.3d 323, 327 n. 5 (Ky.2011); *Brown v. Commonwealth,* 313 S.W.3d 577, 610 (Ky.2010) ("[A]n extension of the core law-of-the-case doctrine is the rule that precludes an appellate court from reviewing not just prior appellate rulings, but decisions of the trial court which could have been but were not challenged in a prior appeal"). Thus, because Appellant confined his argument on appeal to DNA testing of the two sets of hair samples he waived his claims with regard to all other items.

Based upon the issues as Garland presented them in *Garland II,* our opinion ordered the testing of only the hair samples found in Ferrier's hand and on her fingernail, not the fingernail clippings generally, for whatever biological substance they may hold other than hair. Garland's failure to assert his right to have the fingernail clippings analyzed in his 2011 appeal foreclosed his right to make that demand later. That, in turn, forecloses the claim he now wishes to make; namely, that the destruction of the nail clippings deprived him of due process and entitled him to a new trial.

■ Garland abandoned his interest in DNA testing of anything other than the hair specimens. Through the pretrial discovery process, he was made aware that biological specimens had been collected, including the fingernail clippings. He did not seek to have them examined before trial. He invoked his statutory right after trial to have them tested for DNA evidence, but did not pursue that testing on appeal. As a result, we ruled that only the hair samples should be submitted for DNA testing. Garland cannot, after discovering that the fingernail clippings are no longer available for testing, revive his interest in them with the claim that their destruction violated his right to due process. "[I]ssues decided in earlier appeals should not be revisited in subsequent appeals." *St. Clair v. Commonwealth,* 451 S.W.3d 597, 612 (Ky.2014) (citing *Brown v. Commonwealth,* 313 S.W.3d 577, 610 (Ky.2010)).

## III. THE TRIAL COURT'S FINDING THAT THE EVIDENCE WAS NOT DESTROYED IN BAD FAITH WAS NOT CLEARLY ERRONEOUS

■ The destruction or mishandling of evidence by officers or agents of the state may result in a due process violation. *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). However, the state's destruction of evidence in and of itself does not establish a due process violation. A due process violation arises when the government, acting in bad faith, has caused evidence "potentially useful" to the defense to be destroyed or rendered unavailable. *Youngblood,* 488 U.S. at 58, 109 S.Ct. 333.[2]

We have previously held that in order to make out a due process violation where evidence has been destroyed a defendant

---

**2.** *But cf., Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) holding that a prosecutor's failure to disclose exculpatory evidence may result in the deprivation of due process, even in the absence of bad faith. Garland does not assert a *Brady* violation; the existence of the evidence was made known to him prior to trial.

must show (1) the Commonwealth acted in bad faith in destroying the evidence; (2) the potential exculpatory value of the evidence was apparent before its destruction; and (3) the evidence destroyed was, at least somewhat, irreplaceable. *McPherson v. Commonwealth,* 360 S.W.3d 207, 217 (Ky.2012). "The first two elements are interrelated . . . it must appear that the state deliberately sought to suppress material, potentially exculpatory evidence." *Id.* Thus, whether or not Garland has been deprived of due process will depend upon the facts demonstrating the exculpatory nature of the evidence and the culpability of the government actors in destroying the evidence.

 As an appellate court, we defer to the trial court's findings of fact and we do not disturb those findings on appeal unless those findings are clearly erroneous. CR 52.01. "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Hunter v. Hunter,* 127 S.W.3d 656, 659 (Ky.App.2003). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.*

 Garland concedes that the fingernail clippings had no known exculpatory value when they were destroyed. He contends, however, that an analysis of the biological material, if any, which may have been found on the fingernail clippings, had the potential to be exculpatory; and we agree. Throughout the trial, Garland maintained that his son, Roscoe, committed the murders. Roscoe testified at trial for the Commonwealth. He denied committing the murders and testified in great detail how his father, Garland, shot and killed all three victims. Finding Roscoe's DNA on Jean Ferrier's fingernail clippings would suggest that Roscoe was involved in a struggle with Ferrier and was not, as he claimed, a passive witness. Certainly, anyone involved in the trial, including the prosecutors, the police officers, and defense counsel, who were aware of the competing claims, could have surmised the potential evidentiary value that might arise from an analysis of the fingernail clippings. Garland satisfies the second and third prongs of the test we outlined in *McPherson:* the *potential* exculpatory value of the evidence was apparent before its destruction; and fingernail clippings are "at least somewhat, irreplaceable." *McPherson,* 360 S.W.3d at 217.

 Garland fails, however, to satisfy the first and most crucial prong of the *McPherson* test: bad faith on the part of the government. The trial court found that KSP officers Biggerstaff and Meadows did not act in bad faith when they destroyed the fingernail clippings, and that finding is supported by substantial evidence, and thus was not clearly erroneous. The evidence clearly showed that the officers disposed of the material in accordance with the routine KSP protocol for handling collected evidence that was not introduced at trial. As conceded by Garland, the fingernail clippings had no known exculpatory value during and after the trial. It was, therefore, reasonable for the officers to assume after the trial that, if neither the prosecution nor the defense had any use for an item, there was no reason to keep it. The trial court also noted that its order to preserve evidence was entered two years prior to the trial and was never conveyed to the officers.[3]

In *Sanborn v. Commonwealth,* 754 S.W.2d 534 (Ky.1988), we held that a de-

---

**3.** Notwithstanding the KSP protocol for the post-trial disposition of evidence, at least in the context of a capital offense resulting in a death sentence, the better practice would seem to dictate preserving all items collected in connection with the case. The protracted

fendant's due process and discovery rights were violated when the prosecutor deliberately erased witness interview tapes in order to keep defense counsel from obtaining the statements contained therein. Here, however, in stark contrast to *Sanborn,* sufficient evidence was presented to "induce conviction in the mind of a reasonable person"[4] that the fingernail clippings were discarded as a matter of course in routine compliance with existing policy, and with no intention of depriving Garland of exculpatory evidence. Accordingly, we are not at liberty to disturb the trial court's factual finding on this issue.

## IV. CONCLUSION

For the reasons set forth above, the judgment of the McCreary Circuit Court is affirmed.

Minton, C.J., Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur.

appellate processes that flow from a death case are well known, and, as here, often result in post-trial proceedings if not an entirely new trial under different evidentiary circumstances. Notice to the prosecution, the defense counsel and the trial court seem like prudent steps to take in a death penalty case when the post-trial destruction of such items is contemplated.

4. *See Hunter,* 127 S.W.3d at 659.