**Marcus D. GREENE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**2014–SC–000122–MR**

Supreme Court of Kentucky.

RENDERED: DECEMBER 17, 2015

Counsel for Appellant: Franklin Todd Lewis, Kahloon, Pasic & Lewis, PLLC, Frankfort.

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Alice Auclair Jones, Louisville, Mark S. Baker, Central City.

OPINION OF THE COURT BY
CHIEF JUSTICE MINTON

Marcus D. Greene contends that he pleaded guilty relying upon inaccurate information given to him by his counsel concerning jail-time credit he could receive against the sentence of imprisonment ultimately imposed upon him in the judgment entered in the present case. Greene made that argument in the trial court before final sentencing in a motion to withdraw his guilty plea. The trial court denied Greene's motion after holding an evidentiary hearing. The trial court found that Greene may have received inaccurate advice from his trial counsel about jail-time credit but Greene did not rely upon it nor was he prejudiced by it. Because we conclude that the trial court did not abuse its discretion in ruling that Greene was not prejudiced by counsel's mistake, we uphold the trial court's decision and affirm the resulting judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The grand jury indicted Greene on two counts of capital murder, one count of first-degree assault, one count of first-degree burglary, two counts of possession of a handgun by a convicted felon, one count of first-degree wanton endangerment, two counts of tampering with physical evidence, and two counts of illegal possession of a controlled substance.

Greene was on parole when he allegedly committed the crimes charged in the indictment. So, soon after the return of the indictment, his parole was revoked; and he was returned to prison to serve the remainder of a fifteen-year sentence while awaiting trial on the charges contained in the indictment.

The Commonwealth made a plea offer at the close of jury selection and before opening statements at trial. In the harried plea-bargaining process, Greene's attorneys strongly urged him to accept the plea deal the Commonwealth offered. During this time, Greene repeatedly asked counsel whether the time he spent in prison awaiting trial on the charges in the indictment would be credited against his sentence received as part of the plea bargain with the Commonwealth. Greene claims he was hesitant to accept the plea deal but was advised by his counsel that this time served pending trial would be credited to his final sentence in the present case.

So Greene pleaded guilty to first-degree manslaughter[1], second-degree manslaughter, and a variety of Class C and Class D felonies. But before final sentencing, he

---

1. Greene entered an *Alford* plea to this offense. *See, e.g., North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (a guilty plea where the defendant maintains his innocence but admits the prosecution has enough evidence to prove he is guilty beyond a reasonable doubt).

moved to withdraw his guilty plea after reviewing the presentencing investigation (PSI) report that showed he would not be credited on the present sentence for the nearly three years he had been in prison after his parole was revoked. After recognizing Greene's issue, the trial court continued sentencing, permitted Greene's existing attorneys to withdraw, and appointed new counsel to represent him in his motion to withdraw his guilty plea.

Greene filed a motion based on Kentucky Rules of Criminal Procedure (RCr) 8.10 urging the trial court to allow him to withdraw his guilty plea. As basis for his motion, Greene contends he was provided ineffective assistance of counsel and he relied on erroneous legal advice regarding time served when he entered his guilty plea. The trial court held an evidentiary hearing on the motion in which Greene's former attorneys and Greene himself testified. Both attorneys confirmed that at some point while representing Greene, he was given incorrect advice on jail time he would be credited in this case; although, one seemed to devalue the error and Greene's actual reliance.

The trial court denied Greene's motion after a review of both the law and the factual circumstances in this case. He was then finally sentenced to twenty years' imprisonment—ten years to be served as a violent offender (first-degree manslaughter) consecutive to ten years with parole eligibility in 20 percent. Further, his *Alford* plea carries 85 percent parole eligibility. He now appeals the trial court's findings and legal analysis to this Court as a matter of right.[2] Because we cannot con-

clude the trial court abused its discretion in refusing to allow Greene to withdraw his guilty plea, we affirm the judgment entered below.

## II. ANALYSIS.

### A. Abuse of Discretion is the Proper Standard of Review.

 Ineffective assistance of counsel is a well-recognized premise for an RCr 8.10 motion to withdraw a guilty plea under Kentucky law.[3] The United States Supreme Court developed a two-part test in determining whether a defendant is entitled to relief. To succeed, a moving defendant must establish: (1) that counsel's performance fell below an objectively reasonable standard; and (2) that the performance gave rise to a reasonable probability of a different outcome.[4] The Supreme Court later addressed guilty pleas in particular and held that the defendant must show that had he not received erroneous parole-eligibility advice, he would not have entered the guilty plea and would have proceeded to trial.[5] So Greene is correct in his assertion that to succeed on his motion, he needed to show that both his trial counsel, in fact, provided him with erroneous legal advice and that but for that mistake, he would not have pleaded guilty.

 Before we may apply the facts of this case to the legal standard expressed above, we must clarify our standard for reviewing the trial court's ruling. Both parties posit that we must review the trial court's factual findings for clear error and

---

**2.** Ky. Const. § 110(2)(b).

**3.** *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); and *Commonwealth v. Pridham,* 394 S.W.3d 867 (Ky. 2012).

**4.** *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

**5.** *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

examine its legal conclusions de novo, premised on our holding in *Commonwealth v. Pridham.*[6] But this is not a categorical approach to review of RCr 8.10 motions. Indeed, the proffered standard applies to *involuntary* pleas. It is true a guilty plea is involuntary if "the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court."[7] But our precedent suggests misapprehensions like Greene's do not fall within the class of those that give rise to an involuntary plea.

In *Edmonds v. Commonwealth,* we walked a fine line with what we consider "a direct consequence of a guilty plea" to which a pleading defendant must be fully apprised. There, we held that the "full range of penalties for the charge to which the defendant pleads guilty" requires awareness; but a defendant's parole eligibility is not such a direct consequence of the plea to render the plea involuntary.[8] We understand that Greene's case involves jail-time credited to his sentence, while *Edmonds* involved parole eligibility. But jail-time credit does not equate with the full range of penalties for the charges to which he was pleading guilty, and he makes no claims of ignorance to those. And given our assessment in *Edmonds,* we

cannot declare Greene's plea involuntary. So we reject the parties' proffered standard of review.

█ Instead, the proper yardstick for our review in this case is a determination of whether the trial court abused its discretion in denying Greene's motion. The *Pridham* Court itself recognized that the decision whether to grant a pre-judgment motion to withdraw a voluntary guilty plea is left to the trial court's "sound discretion."[9] To be sure, the text of RCr 8.10 itself declares that the trial court *may permit* a defendant to withdraw a guilty plea. At its heart, a motion to withdraw a voluntarily entered guilty plea is an appeal to the discretion of the trial court. Greene suggests that because his situation involves a non-collateral, constitutional issue (ineffective assistance of counsel), we should conduct his suggested de novo review. But we see no reason to depart from what appears to be a well-established policy of keeping the decision to grant or deny voluntary guilty pleas within the trial court's prerogative. So we will not disturb the denial of Greene's motion to withdraw his guilty plea absent a determination that the trial court's ruling was "arbitrary, unreasonable, unfair, or unsupported by legal principles."[10]

6. 394 S.W.3d at 875 ("Under either rule [RCr 8.10 or 11.42] we review the trial court's factual findings only for clear error; but its application of legal standards and precedents ... we review de novo.").

7. *Edmonds v. Commonwealth,* 189 S.W.3d 558, 566 (Ky. 2006). *See also Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

8. *Id.* at 567 n. 5. It should be noted that this holding in *Edmonds* would seemingly contradict our ruling in *Pridham,* which recognized that parole eligibility forms the basis for an actionable ineffective assistance of counsel

claim. But in *Pridham,* our holding was not categorical with respect to parole eligibility itself. Instead our decision rested on the parole consequences of Kentucky's violent-offender statute—which greatly impacted the consequences of the defendant's plea. A defendant's ignorance of aggravating factors related to a plea was the motivating thrust in *Pridham,* which is distinguishable from parole eligibility in the abstract, or simple miscalculations like this case.

9. *Pridham,* 394 S.W.3d at 885.

10. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

## B. The Trial Court did not Abuse its Discretion in Denying Greene's RCr 8.10 Motion.

■ With the appropriate standard of review firmly in place, we will now review the trial court's analysis of Greene's RCr 8.10 motion premised on ineffective assistance of trial counsel. A careful appraisal of the facts giving rise to Greene's guilty plea confirms that the trial court did not abuse its discretion in refusing to allow Greene to withdraw the plea.

As for the first ineffective assistance of counsel factor, we agree with the trial court's assessment that Greene "may" have been given erroneous legal advice. The factual basis for this stems primarily from statements made by Greene's co-counsel. While counseling Greene, he made some statement, whether "overtly, by inference, or simply not contradicted," affirming that he would receive time credit on his sentence in this case from the time he was arrested. And, to an extent, this was correct advice—any time served as part of *this* crime would have been credited. At some time before sentencing, Counsel and Greene failed to communicate on the precise amount of jail-time served by Greene would be credited to the sentence contemplated as part of his plea.

It is important to note that Greene's other attorney allegedly gave Greene corrected advice on this issue; and she was absent when the allegedly mistaken advice to Greene was articulated. Furthermore, two weeks before trial, the incorrect information was repeated; but Greene corrected counsel that he would not get credit for time served. But considering that Greene wished to withdraw his plea the day of final sentencing after reviewing his PSI report, it is certainly plausible this confusion regarding jail-time credit may have again dominated Greene's understanding of his situation. This, in unison with the fact that counsel readily admits to supplying Greene with incorrect legal advice, allows us to agree with the trial court's finding that he "may" have received erroneous advice from counsel in satisfaction of the first factor.

As for the second factor, we see no reason to displace the trial court's finding that there is no reasonable probability that Greene was prejudiced as a result of the erroneous advice. Greene and the Commonwealth present two competing theories of how we should approach calculating the reasonable probability of prejudice to a defendant wishing to withdraw his guilty plea after receiving incorrect legal information from counsel.

Greene urges us to accept a completely *subjective* approach, relying on his own perception of the situation leading up to his decision to accept the Commonwealth's plea. We cannot embrace this approach because of clear practical and logical implications. Of course, every appealing defendant will claim that whatever erroneous information received will be the gravamen behind the decision to plead guilty—and, in many instances, this may indeed be a sincere account. But this departs from the Supreme Court's guidance in *Strickland* requiring a "reasonable probability" of a different outcome absent the poor advice. We cannot depend on such a subjective approach when the test commands at least some objectivity for consistent application.

■ Conversely, the Commonwealth favors an overwhelmingly *objective* analysis, intruding into the rationality of Greene's decision to withdraw his plea. Much of this argument centralizes around how favorable the Commonwealth's plea deal was

to Greene.[11] While the *Strickland* test (as updated in *Padilla v. Kentucky*) is ultimately an objective inquiry measuring the reasonability of a different outcome, we think the Commonwealth's stated mechanism is overly inclusive. A decision to accept or reject a plea offer may not, in a given case, be a rational choice. But this is a defendant's choice alone to make. And we decline to adopt a test that probes Greene's analysis of the strength of his own case in assessing the rationality of his plea decision.

Instead, we simply must ask if Greene were given the correct information from the outset, would he have nonetheless accepted the Commonwealth's bargain. Or, in other words, does the inaccurate advice about jail-time credit under these circumstances "undermine confidence in the outcome"?[12] Under this analysis, we cannot say the trial court abused its discretion in concluding Greene was not prejudiced by this potential misunderstanding.

Though we do not doubt that time served is important to Greene, this issue is not material to the ultimate disposition of his case, regardless of whether he accepted the plea or was convicted by a jury. His mistaken belief as to the application of jail-time credit applied, if at all, as he evaluated *all* potential outcomes facing him. His weighing of the Commonwealth's plea offer against the penalties he faced if convicted at trial would produce the same result, even if he applied an incorrect jail-time credit number to each outcome. In other words, the accuracy of the jail-time credit bears no impact on whether a ten-year sentence or twenty-year sentence looks more appealing. Jail-time credit would weigh equally whether reviewing a plea offer or the potential trial penalties.

Indeed, even in the worst possible outcome for Greene—if he were convicted and sentenced to death or life imprisonment without the possibility of parole—this issue is completely moot. We fail to see the reasonable likelihood of a different result in this case had Greene not been given incorrect jail-time credit information, and we find no error in the trial court's analysis of this issue. In short, the trial court appropriately exercised its discretion in determining Greene was not prejudiced by his mistaken understanding of the time he would be credited for a different offense.

## III. CONCLUSION.

For the foregoing reasons, we affirm the trial court's judgment.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, Venters, JJ., sitting. All concur. Wright, J., not sitting.

---

11. The Commonwealth's brief pointed out how generous its offer was to Greene. To be sure, a twenty-year sentence in a potential capital case appears to be a highly favorable result for Greene. But we must remind ourselves that Greene also pondered the possibility of his acquittal—a proposition to which he appeared relatively confident. So we simply cannot accept the notion that Greene's desire to reject the offered deal is itself objectively irrational.

12. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.