# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0410-DG

COMMONWEALTH OF KENTUCKY              APPELLANT

V.            
ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-1243
JEFFERSON CIRCUIT COURT NO. 15-CR-002253

CANON HARPER                                  APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>REVERSING</u>**

Canon Harper (Harper) pled guilty to two counts of complicity to attempted murder, two counts of complicity to first-degree assault, one count of complicity to first-degree robbery, and one count of complicity to first-degree wanton endangerment. Prior to sentencing, Harper filed a motion to withdraw his guilty plea pursuant to RCr[1] 8.10 on the grounds that it was involuntary. Following a hearing, Harper's motion was denied. A split Court of Appeals panel reversed, and the Commonwealth now seeks reversal of that ruling. After review, we reverse the Court of Appeals and reinstate the trial court's order denying Harper's motion to withdraw his guilty plea.

---

[1] Kentucky Rule of Criminal Procedure.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

In August 2015, Harper and his co-defendant Brandon Washington (Washington) were jointly indicted on two counts of complicity to attempted murder, two counts of complicity to first-degree assault, one count of complicity to first-degree robbery, and one count of complicity to first-degree wanton endangerment.[2]

The Commonwealth alleged that in May 2015, Harper and Washington went to the home of Michael White (White) to buy marijuana from him.  A mutual acquaintance, Ryan Standifer (Standifer), had arranged the transaction and arrived at White's home at the same time as Harper and Washington. Once inside White's residence, Harper and Washington pulled handguns on White and Standifer.  While Harper and Washington were robbing White and Standifer, White's neighbor Charles Ballard (Ballard) unexpectedly entered the residence.  When Ballard realized what was happening, he turned and fled from the residence.  Harper pursued Ballard and began shooting at him, striking him in the upper leg.  White also attempted to flee from the residence, but Washington shot him in the torso, striking his spine and paralyzing him from the waist down.  Harper and Washington then fled to their vehicle.  But, before leaving the scene, Washington fired a round at Standifer who was standing in the doorway of the residence.  Standifer was physically unharmed.

---

[2] Washington was also separately indicted for possession of a handgun by a convicted felon and being a first-degree persistent felony offender.

Following the indictment, public defender Aaron Dyke (Dyke) was appointed to represent Harper. Three months after Dyke was appointed, Harper retained private attorneys Scott Drabenstadt (Drabenstadt) and Steve Esselman (Esselman). Harper's and Washington's trial was initially set for May 2016, but that date was later converted to a pre-trial conference by agreement of the parties. The trial was then rescheduled for October 2016. The October date was converted to address a suppression issue, and trial was rescheduled again for March 2017. In January 2017, Drabenstadt withdrew from the representation after he was hired as an Assistant Commonwealth's Attorney. Esselman also withdrew from the representation in March of that year. The March trial date was rescheduled for August 2017. Harper next hired Justin Brown (Brown), who filed his entry of appearance on March 23, 2017.

On the morning of the August trial date, Brown announced ready for trial. However, Washington's counsel did not appear and instead sent a representative to request a continuance. The request was granted, and the trial was rescheduled for February 2018. In December 2017, Brown withdrew as Harper's counsel because he had not been fully paid pursuant to his retainer agreement. The court then re-appointed Dyke to represent Harper, and the trial was set for the final time for August 14, 2018.

On July 16, 2018, Harper appeared in court with Dyke and moved to enter a conditional[3] guilty plea. The court began the hearing on Harper's

---

[3] As part of his plea deal, Harper reserved the right to appeal the issue of his private counsel withdrawing from his case and being hired by the Commonwealth's Attorney's office during his representation. That issue is not before us.

motion by explaining his right to remain silent; his right to a jury trial, which included his right to confront the Commonwealth's witnesses against him; and his right to appeal. The court then explained that Harper would be giving up those rights with regard to the charges he pled guilty to, and asked if he understood that; he responded, "Yes ma'am." Harper told the court that he was not under the influence of any drugs or alcohol and that he had never been treated for any mental health issues. He further stated that no one had threatened him in any way to enter a guilty plea, and that he was pleased with Dyke's advice as his lawyer. Finally, Harper confirmed that Dyke had discussed all of the information contained in the plea agreement documents with him, and that he understood and signed them. That information included the Commonwealth's recommended sentence of ten years without probation eligibility, and that Harper had to serve eighty-five percent of his sentence before he would be eligible for parole.[4] The court read the facts supporting the charges as recounted above, which Harper acknowledged were true. The court accepted Harper's guilty plea and found that it was knowingly, voluntarily, and intelligently entered. Harper's sentencing was scheduled for September 5, 2018.

On August 14—less than one month after Harper entered his guilty plea—Washington's case proceeded to trial. Washington's trial strategy placed all of the blame for the offenses on Harper, and he was acquitted of all charges.

---

[4] *See* Kentucky Revised Statute (KRS) 439.3401.

On September 5, Harper appeared with Dyke for his sentencing hearing. However, Dyke announced that Harper wished to withdraw his guilty plea. Harper's bases for withdrawal concerned Dyke's representation and conversations they had about the case. Dyke therefore requested that conflict counsel be appointed for Harper. The court obliged and set a hearing on the motion for December 10. In Harper's subsequent written motion to withdraw his guilty plea he alleged that "the plea was made under the undue influence of counsel, [Dyke]. [Harper contended] that [Dyke's] presentation of the options available to [Harper] painted a dire picture should he proceed to trial and, as such, that accepting the plea agreement was the best decision for him." He requested that the court determine whether his plea was voluntarily entered.

Dyke, Harper, and Harper's former counsel Brown testified at the hearing. Dyke testified that the Commonwealth's plea deal was offered prior to his second appointment to Harper's case in January 2018. At that time, Dyke did not have an opinion regarding the plea offer because he had not yet reviewed the evidence from discovery. Later, on June 24, he spoke with Harper at length about the offer. Dyke told him that it was possible that Washington would get a better outcome at trial than what the Commonwealth had offered him. Harper responded that he was not willing to risk going to trial. Dyke believed that accepting the Commonwealth's plea offer was in Harper's best interest based on his experience as a criminal attorney, the evidence in the case, and his conversations with Harper. If convicted at trial, Harper was facing a maximum penalty of seventy years imprisonment. And the

Commonwealth's evidence against him included three eyewitnesses to the crimes, as well as the fact that Harper was apprehended in Detroit, which would likely lead the Commonwealth to argue that he fled. Further, there were substantial injuries to two of the victims, in particular White who would likely garner a great deal of sympathy from the jury.

Notwithstanding, Dyke told Harper that it was a case he "could see going either way at trial," and he had no reluctance to go to trial if Harper so wished. At trial, Dyke believed he could attack the victims' credibility by introducing their involvement in a prior offense wherein they pulled guns on other people during a drug transaction and robbed them. This, in turn, would allow Dyke to argue that Harper acted in self-defense. Accordingly, the decision about whether to plead guilty or go to trial rested solely with Harper. Dyke further testified that all of his conversations with Harper were cordial and professional, that he did not force Harper to accept the plea deal, and that Harper did not seem hesitant to accept it. When Harper's counsel asked why he was not offered an *Alford*[5] plea, Dyke responded that an *Alford* plea was never discussed because the Commonwealth wanted to leave open the possibility of calling Harper to testify against Washington at his trial.

Harper testified that he accepted the plea offer because he "felt like [he] had no choice." He cited the fact that he had no experience with the criminal justice system; that Dyke told him his chances at trial were not good due to the

---

[5] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

6

Commonwealth's evidence; and that Dyke, as a public defender, did not have adequate time to spend on his case. Additionally, he expounded that he felt like he had no choice "because [he felt] like to make it home the only thing [he] had to do was plead guilty, that's what [he] was told. Either go to trial and lose, [his] chances were slim, or just take this, finish doing this time, and make it home." Harper also complained that he was not offered an *Alford* plea despite maintaining his innocence prior to his plea colloquy.

In addition, Harper felt that the plea offer was not adequately explained to him, though he was unable to articulate what component of the offer he did not understand. When his attorney asked if he understood that it was an "eighty-five percent deal" he responded, "I understand the eighty-five, but I didn't understand, like, really the 85% of when I can go home because I know there's shock [probation], I know there's different ways of getting home on 85% deals." On cross-examination, when the Commonwealth asked what he thought the plea deal would do, he said, "I just know it's, in Kentucky it's a lot of different things, it's different ways of getting home, I've seen 85%, I know about shock probation, I know a little bit, but I don't really understand everything." Further, he did not argue that he lacked understanding of any portion of the plea offer in his subsequent brief to the trial court.

When Harper's counsel asked him if he felt like Dyke placed an undue influence on him to plead guilty Harper responded, "To a certain extent, yes . . . [Dyke] just pushed it over the edge giving me, like, 'I would rather see you take

7

this and make it home, other than going to trial and getting 20-30 years if convicted. Just take this and go with it.'" However, Harper conceded that Dyke did not force him to plead guilty, nor did he yell at him or threaten him. He acknowledged that Washington's acquittal "played a factor" in his decision to withdraw his guilty plea because it demonstrated that he could prove his innocence with the right attorney. He did not feel that he lied to the court when he stated that the facts alleged by the Commonwealth were true during his plea colloquy because he was just doing what Dyke told him to do.

Brown provided expert testimony that, based on his knowledge of the case, the plea offer seemed to be reasonable. If he had still been Harper's counsel, he could have recommended that Harper accept it; it would not have been a deal that Brown would have rejected outright.

The court allowed the parties to brief the issue and later entered an order denying Harper's motion. It ruled as follows:

> In analyzing this motion, the Court begins with the premise that for a plea to be valid, the Court must find it to be knowing, intelligent, and voluntary. *Williams v. Commonwealth*, 229 S.W.3d 49 (Ky. 2007), citing *Haight v. Commonwealth*, 760 S.W.2d 84, 88 (Ky. 1988). In addition, a motion to withdraw a plea of guilt under RCr 8.10 is generally addressed to the sound discretion of the trial court. *Id.* at 50. Further, where it is alleged the plea was entered involuntarily, the Defendant is entitled to a hearing on the motion. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006). Courts have further held that the inquiry into the circumstances of a plea agreement as concerns its voluntary nature is inherently a fact-sensitive analysis. *Id.* at 566. Finally, a guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the court. *Id.*
>
> Here, the Court asked [Harper] upon entering his plea if he understood an orally-provided list of legal rights, including the

8

right to a trial. The Court further advised Harper that at trial his lawyer would have the right to confront and cross-examine witnesses. The Court further inquired as to whether Harper felt threatened in any way to enter the plea. The Court also asked Harper whether he was satisfied with Dyke's advice as a lawyer. Harper responded, "Yes."

In addition, in this Court's experience, Attorney Dyke is very intelligent, thorough, and professional with his clients. He testified to the Court that he spoke with Harper multiple times regarding the plea. He further testified that he was ready and had no reluctance whatsoever to take [Harper's] case to trial. Dyke further testified that he did not force his client or threaten him in any way to accept the plea. In fact, he specifically stated he advised Harper that it was a case he could see going either way, and that he would try it or plea, whichever [Harper] wanted. Dyke also testified that he informed Harper there was a possibility that his co-defendant would receive a more favorable outcome at trial.

Balancing the totality of the circumstances of the plea, the Court finds that it was entered knowingly, voluntarily, and intelligently. The only type of involuntary nature alleged by Harper was that he testified he felt he had no option but to take the plea. This statement is clearly contradicted by Dyke's testimony regarding the process. There is no allegation in Harper's papers that any matter was misrepresented to Harper either by counsel or the Court. Further, even assuming [Harper] felt pleading was his only option, the Court also advised [Harper] prior to his plea of his right to go to trial. The Court believes that Harper's motion is based upon [Washington's] outcome at trial. A motion to set aside a plea is not for a circumstance in which a defendant merely wishes he could pursue another path in the case.

For all of these reasons, [Harper's] motion to withdraw his prior plea of guilty should be denied.

Harper appealed the court's ruling, and a split Court of Appeals

reversed.[6] The majority held that under the "totality of the circumstances . . .

the trial court's denial of [Harper's] motion to withdraw his guilty plea

---

[6] *Harper v. Commonwealth*, 2019-CA-001243-MR, 2020 WL 4500416, *5 (Ky. App. July 31, 2020).

constituted an abuse of discretion."[7]  The majority based its holding on the

following facts:

> [Harper] is a young man with no prior experience with the criminal justice system.  He had never been in a situation like this one before.  His three private attorneys withdrew through no fault of his own, and one of them went to work as a prosecutor in the same office that is prosecuting him.  Although we find no error in the trial court's denial of the motion to disqualify the Office of the Commonwealth's Attorney, we must acknowledge the likelihood of the subjective misgivings of a possible conflict or even collusion as perceived by Harper that might have impacted his entry of a guilty plea.

> His trial was continued again and again through no fault on [Harper's] part with long stretches between those continuances.  He has now been incarcerated for nearly four years without ever going to trial.  Believing that he had no options, Mr. Harper testified that he did what his counsel said and entered a guilty plea.  However, he staunchly and consistently continued to maintain his innocence.  During cross-examination at the hearing on Harper's motion to withdraw on December 10, 2018, the Commonwealth challenged his veracity by asking him if, by insisting on his innocence, he had lied when he entered his plea of guilty.  He emphasized that he felt that he had no option but to plead guilty.  Significantly, we note that he was never offered an *Alford* plea despite his consistent assertion of his innocence.[8]

In contrast, the dissent argued that the majority "failed to give the trial

court the deference to which it is entitled in the factual determination of

whether Harper's guilty plea was knowing and voluntary," and that there were

---

[7] *Id.*  We note here our agreement with the Commonwealth's contention that the Court of Appeals failed to apply the proper test, discussed *infra*, in reviewing this issue.  The Court of Appeals never addressed whether, based on the totality of the circumstances, the trial court's finding that Harper's plea was voluntary was clearly erroneous.  Nevertheless, it held that the trial court abused its discretion by denying Harper's motion.

[8] *Id.*

"ample facts supporting the trial court's conclusion that Harper made a knowing and voluntary decision to plead guilty."[9]

Additional facts are discussed below as necessary.

## II.   ANALYSIS

Harper's argument to this Court is twofold.  First, he implores us to affirm the Court of Appeals' holding that the trial court's denial of his motion to withdraw was error.  Second, he urges us to abandon our long-standing two-part test for reviewing a trial court's denial of a motion to withdraw a guilty plea in favor of the test utilized by our federal courts.  The federal test allows a defendant to withdraw his guilty plea after the court accepts the plea, but prior to sentencing, if any "fair and just reason" for withdrawal is shown.[10]  Harper's argument concerning the denial of his motion to withdraw was properly preserved.[11]  However, Harper never argued before the trial court that the federal test should be applied in this case, nor did he frame his argument under the fair and just standard.  That argument is therefore unpreserved for our review.[12]  We accordingly decline to address whether the federal standard should be adopted and will analyze Harper's argument using our traditional two-pronged test.

---

[9] *Id.* (Maze, J., dissenting).

[10] Fed. R. Crim. Proc. 11(d)(2)(B) ("A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdraw.").

[11] RCr 9.22.

[12] *See Commonwealth v. Pridham*, 394 S.W.3d 867, 885 (Ky. 2012).

That test, in turn, can be stated as follows. A trial court may not accept a criminal defendant's guilty plea without first finding that it was "made voluntarily with understanding of the nature of the charge."[13] Under RCr 8.10, a trial court "may permit" a guilty plea to be withdrawn at any time prior to judgment. Accordingly, the decision to grant or deny a motion to withdraw is left to the sound discretion of the trial court.[14] If the defendant alleges, as Harper does here, that the plea was involuntary he is entitled to a hearing on the motion.[15] Following that hearing, if the trial court finds that the defendant's plea was involuntary then the motion to withdraw must be granted, but if the plea was voluntary then the court may grant or deny the motion at its discretion.[16] Whether a plea was voluntary is an inherently fact-sensitive inquiry and is therefore reviewed under a clearly erroneous standard,[17] whereas the decision to grant or deny the motion to withdraw is within the trial court's discretion and is therefore reviewed for abuse of discretion.[18]

Put simply, we must first determine whether the trial court's ruling that Harper's guilty plea was voluntary[19] was supported by substantial evidence,

---

[13] RCr 8.08.

[14] *See, e.g.*, *Greene v. Commonwealth*, 475 S.W.3d 626, 630 (Ky. 2015).

[15] *See, e.g.*, *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007).

[16] *Id.*

[17] *Id.*

[18] *Edmonds v. Commonwealth*, 189 S.W.3d 558, 570 (Ky. 2006).

[19] Harper's sole contention is that his plea was involuntary, he does not argue that it was unknowing or unintelligent.

i.e., "evidence when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person."[20] We must then decide whether the trial court's decision to deny Harper's motion was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[21]

A valid guilty plea is one that represents a voluntary and intelligent choice among the varying choices available to the defendant.[22] Whether a guilty plea was valid is not determined by a reference to some "magic incantation recited at the time it is taken."[23] Rather, that determination must be based on the totality of the circumstances surrounding the guilty plea, including the "background, experience, and conduct of the accused."[24] "A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court."[25]

To begin, the trial court conducted a proper *Boykin*[26] colloquy prior to accepting Harper's guilty plea. That is to say, the court informed Harper of his privilege against compulsory self-incrimination, his right to trial by jury, and

---

[20] *Garland v. Commonwealth*, 458 S.W.3d 781, 786 (Ky. 2015).

[21] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[22] *Williams*, 229 S.W.3d at 51.

[23] *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978).

[24] *Id.*

[25] *Edmonds*, 189 S.W.3d at 566.

[26] *See Boykin v. Alabama*, 395 U.S. 238 (1969).

his right to confront the witnesses against him.[27]  Harper stated that he

understood those rights, and that he understood he was waiving those rights in

relation to the charges against him.  Harper further testified during the

colloquy that he was not threatened in any way to enter the plea, and that he

was satisfied with Dyke's advice as his counsel.  Harper now faults the trial

court for not inquiring into whether he could read and write English or what

his level of education was.  However, he does not claim that he cannot read and

write English or that a possible lack of education prevented him from entering

a voluntary and intelligent guilty plea.  Harper also consistently mentions that

he was not offered an *Alford* plea.  But a criminal defendant has no

constitutional right to a plea bargain of any kind.[28]  The Commonwealth was

accordingly not obligated to offer Harper an *Alford* plea.[29]

Harper also contends, as his primary argument to this court, that the

trial court erred by failing to take the somewhat uncommon circumstances of

his case into account when weighing the totality of the circumstances.  Namely,

the three years and eleven months he was incarcerated between being indicted

---

[27] *Commonwealth v. Jackson,* 529 S.W.3d 739, 746–47 (Ky. 2017) ("*Boykin* requires that when a plea of guilty is entered in a state criminal trial, the record must affirmatively show that the defendant was informed of, and waived, his privilege against compulsory self-incrimination; his right to a trial by jury; and his right to confront his accusers.").

[28] *See Porter v. Commonwealth*, 394 S.W.3d 382, 388 (Ky. 2011).

[29] *Id.*

and pleading guilty; his numerous trial continuances; and having three different private attorneys abandon his representation, one of which went to work for the same Commonwealth's Attorney's office that was prosecuting him. But Harper never cited those facts as contributing to the involuntariness of his plea in either his testimony or his subsequent memorandum in support of his motion to withdraw.

Instead, Harper only argued that he felt he had no choice but to plead guilty due to a combination of his inexperience with the criminal justice system and Dyke unduly influencing him to accept the plea offer. The court found that Dyke's testimony clearly refuted this argument, which was a credibility determination that this Court should not disturb.[30] Dyke testified that he spoke with Harper about his options in relation to the plea. Dyke told Harper he could see the case going either way at trial and that they could proceed to trial if Harper wanted to. Dyke further stated, and Harper conceded, that Dyke did not threaten Harper or force him into accepting the plea; the decision was solely his. Harper also knew that there was a possibility that Washington could be acquitted at trial. And, given the timing of Harper's motion to withdraw in relation to Washington's acquittal, as well as Harper's acknowledgement that Washington's acquittal contributed to his decision to withdraw his plea, it was not error for the trial court to find that Harper's motion was primarily motivated by Washington's outcome at trial.

---

[30] *Commonwealth v. Bussell*, 226 S.W.3d 96, 101 (Ky. 2007) ("[T]he trial court is in the best position to determine the credibility of witnesses and this Court should not second-guess credibility determinations.").

15

In sum, there was nothing in the record to indicate that Harper lacked full awareness of the direct consequences of pleading guilty or that he relied on a misrepresentation by the Commonwealth or the trial court. We accordingly hold that the trial court's finding that his guilty plea was voluntary was supported by substantial evidence. Because of this, we cannot say that the trial court's decision to deny Harper's motion to withdraw was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

## III. CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is reversed and the trial court's order denying Harper's motion to withdraw is hereby reinstated.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Daniel John Grabowski
Assistant Attorney General

Todd Dryden Ferguson
Assistant Attorney General

COUNSEL FOR APPELLEE:

John Patrick Ward
Murphy & Associates