# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0606-MR

BRADLEY TYSON MORRIS                                                    APPELLANT


ON APPEAL FROM GRAVES CIRCUIT COURT
V.              HONORABLE TIMOTHY C. STARK, JUDGE
NO. 18-CR-00058


COMMONWEALTH OF KENTUCKY                                              APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

Bradley Morris appeals as a matter of right[1] from his convictions of assault in the first degree, burglary in the first degree, felon in possession of a handgun, tampering with physical evidence and being a persistent felony offender ("PFO") in the second degree. The Graves Circuit Court sentenced Morris to seventy years of imprisonment. Following a careful review of the record and the applicable law, we affirm the trial court, except that we reverse Morris's conviction for tampering with physical evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

---

[1] Ky. Const. §110(2)(b).

In December 2017, Kathy Bouland was shot three times. When Officer Kimbro arrived at the scene, he asked Bouland if she knew the identity of her assailant. Bouland responded that the shooter was her ex-boyfriend, Bradley Morris. Morris turned himself in to police custody that same afternoon, claiming he had heard there was a warrant out for his arrest, but admitting no wrongdoing. A grand jury indicted Morris for assault in the first degree, burglary in the first degree, felon in possession of a handgun, tampering with physical evidence; and for being a PFO in the first degree.

During voir dire, Morris objected when the Commonwealth listed his cousin, Donnie Morris ("Donnie"), as a witness, claiming Donnie's inclusion violated the forty-eight-hour rule in RCr[2] 7.26. The court noted the objection but reserved ruling until Donnie was called at trial.

At trial, the Commonwealth presented testimony that on the day of the incident, Morris had been searching for Bouland and threatened her friend for her whereabouts, once he recognized Bouland's vehicle in an apartment parking lot. Bouland testified that when she stepped out of the apartment, Morris exited the back of a vehicle, immediately firing at and striking her in the calf. Bouland stated that she retreated to the apartment, trailed by Morris, who was still shooting at her. As she entered the apartment, one of the bullets struck her arm. Bouland testified that she sought refuge in the bathroom, where another bullet struck her knee. Bouland testified that the rain of bullets

---

[2] Kentucky Rules of Criminal Procedure.

continued until she heard a "click" as if from an empty magazine. Bouland's and other eye-witness testimony established that Morris immediately fled the scene after running out of ammunition.[3]

On the second day of trial, the Commonwealth called Donnie to testify, to which Morris again objected, but was overruled by the trial court. Donnie testified that on the day Bouland was shot, he received a phone call from a number he did not recognize. The caller asked Donnie if he was at work. Donnie responded affirmatively, and the caller hung up. Although Donnie and Morris spoke almost daily, Donnie testified that he was unsure who had called him in part because the conversation was brief, and the caller did not identify himself.

Thereafter, the Commonwealth called Charles Kirk to testify. Kirk worked as the maintenance employee for the apartment complex where Bouland was shot. Morris objected to his testimony on the grounds that the prosecution failed to identify him as a witness prior to trial. The record reflects that Kirk was never on a witness list, and his subpoena was returned only a day before trial. The trial court overruled Morris's objection and he was allowed to testify. His sole testimony confirmed that the apartment complex lacked surveillance equipment where the attack occurred.

---

[3] Bouland also discussed the nature of her injuries, on which the Commonwealth relied to establish evidence of "serious bodily harm or disfigurement." We discuss the substance of that testimony *infra.*

The jury convicted Morris of all counts, and sentenced him to more than seventy years of imprisonment. The trial court reduced Morris's sentence to the statutory maximum of 70 years. This appeal followed. Additional facts will be discussed as necessary to resolve issues raised.

## II. ANALYSIS.

### A. RCr 7.26.

During voir dire and the Commonwealth's case-in-chief, Morris objected to the testimony of Donnie and Kirk, both of whom ultimately testified. With regards to Donnie's testimony, Morris stated that while he had received a subpoena notice the previous week, Donnie was not on the Commonwealth's witness list, and that Donnie's testimony was not provided to Morris in compliance with RCr 7.26(1) as well as being untimely under the forty-eight-hour component of the rule. Morris additionally asserts on appeal that the Commonwealth violated RCr 7.24(2). Morris, however, did not rely on or argue RCr 7.24 to the trial court, thereby failing to preserve the challenge. *See Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) (stating "[a] new theory of error cannot be raised for the first time on appeal[]"). We decline to review the challenge on the basis of RCr 7.24. Additionally, Morris seems to assert that the Commonwealth failed to disclose that Donnie or Kirk would testify and the substance of their respective testimony. Our criminal rules do not require disclosure of witness lists or the type of discovery Morris suggests was lacking. *See Porter v. Commonwealth*, 394 S.W.3d 382, 387 (Ky. 2011) (holding that "the defendant does not have a right to all information possessed

4

by the prosecutor. Nor is a defendant generally entitled to a list of witnesses from the opposing party[]") (citations omitted).

RCr 7.26(1) provides:

[N]ot later than forty-eight[] hours prior to trial, the attorney for the Commonwealth shall produce all statements of any witness in the form of a document or recording in its possession which relates to the subject matter of the witness's testimony and which (a) has been signed or initialed by the witness or (b) is or purports to be a substantially verbatim statement made by the witness. Such statement shall be made available for examination and use by the defendant.

Morris's reliance on RCr 7.26(1) misinterprets the rule's scope and intended application. RCr 7.26(1) does not create an affirmative duty on the Commonwealth or its investigatory teams to create evidence for the defense. Instead, the rule only becomes operative when such evidence exists. *Robinson v. Commonwealth*, 490 S.W.2d 481, 482 (Ky. 1973). Relying on the plain language of RCr 7.26(1), the Commonwealth was obliged to provide Morris copies of witness statements "in its possession" which were memorialized in a "document or recording" and which related to the "subject matter of the witness's testimony[.]"

As with all discovery rulings, the trial court's decision is treated as a finding of fact and therefore is entitled to an abuse of discretion standard of review on appeal. *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013). Consequently, we will not disturb the trial court's decision unless the ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). Even when a discovery violation is discovered, reversal is only

appropriate when "a 'reasonable probability' [exists] that had the evidence been disclosed the result at trial would have been different." *Weaver v. Commonwealth*, 955 S.W.2d 722, 726 (Ky. 1997) (quoting *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)); *see also* RCr 9.24 (setting forth harmless error rule and stating that the "court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties[]"); *Baumia v. Commonwealth,* 402 S.W.3d 530, 545-46 (Ky. 2013) (affirming conviction due to overwhelming evidence against defendant, notwithstanding Commonwealth's failure to disclose prior misdemeanor theft conviction introduced during penalty phase); *Grant v. Commonwealth*, 244 S.W.3d 39, 44 (Ky. 2008) (reversing conviction due to Commonwealth's concealment of defendant's incriminating phone call introduced in rebuttal following defendant's testimony).

    1.    <u>Donnie Morris's Testimony</u>.

Morris's objection to Donnie's testimony is without merit because he received all the information which the Commonwealth possessed, the two bodycam videos which recorded Officer Brian Adams' conversation with Donnie.[4] Officer Adams called Donnie during the early minutes of the manhunt for Morris. The conversation between Adams and Donnie solely

---

[4] Morris originally objected to Donnie's testimony based on the forty-eight-hour rule in RCr 7.26(1). As Morris acknowledged at trial, the Commonwealth had filed a subpoena with the court the week before, well outside of the rule's operative time frame. If Morris was unaware of the subpoena, the reason was oversight. In any event, as discussed, no violation of RCr 7.26(1) occurred.

focused on whether Donnie could provide the police with information to help them apprehend Morris. The phone call was short and culminated in Donnie relaying a phone number which the officers "pinged" in an attempt to locate Morris.

By its terms, RCr 7.26(1) is inapplicable. First, a recording, obviously, is not a document subject to signing. RCr 7.26(1)(a). Secondly, the recording was not or "purport[] to be a substantially verbatim statement made by" Donnie. RCr 7.26(1)(b). The Commonwealth is not required to create evidence in a form the defense might wish to have. *See Yates v. Commonwealth*, 958 S.W.2d 306, 308 (Ky. 1997) (holding RCr 7.26(1) only requires production of statements; no requirement limits testimony to the four corners of a document). No discovery violation occurred as to Donnie's testimony.

2.  Charles Kirk's Testimony.

Kirk was the maintenance man at the apartment complex where Bouland was shot. Kirk was called to testify that the apartment complex had video cameras fitted to certain, high traffic areas of the complex. No cameras, however, were positioned in a way which would have captured the attack. Morris argues that the Commonwealth failed to include Kirk in its original witness list and failed to provide him with a written statement of Kirk's testimony prior to trial in violation of RCr 7.26(1).

Morris does not argue, and the record does not support, that the Commonwealth had a written or recorded statement of Kirk's anticipated testimony. Again, RCr 7.26(1) is simply inapplicable.

7

### B. Motions for Directed Verdict: Tampering with Physical Evidence and Assault in the First Degree.

Following the Commonwealth's proof, Morris moved generally for a directed verdict. Morris did not call any witnesses and again moved generally for directed verdict. As to these directed verdict motions, the Commonwealth argues they are improperly preserved for appellate review due to the lack of specific grounds. CR[5] 50.01. We agree.

> In the recent case of *Ray v. Commonwealth*, we held:
>
> [I]n order to preserve an alleged directed verdict issue for appeal, criminal defendants must: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; **and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove.** Criminal defendants may move for directed verdict on one count of a multiple count indictment without rendering the alleged error unpreserved; defendants are not required to move for directed verdict on any lesser included offenses to a particular charge in order to preserve the issue; and, nor are they required to object to instructing the jury on that particular charge to preserve the alleged directed verdict error.

611 S.W.3d 250, 266 (Ky. 2020) (emphasis added). Morris's failure to identify the particular charge or the particular elements of that charge necessitates the conclusion that this error is not preserved.

---

[5] Kentucky Rules of Civil Procedure.

8

Because Morris's reply brief requests palpable error review pursuant to the standard set forth in RCr 10.26, we will review these alleged errors under that standard:

> Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is palpable and *if* it affects the substantial rights of a party. Even then, relief is appropriate only upon a determination that manifest injustice resulted from the error. For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotations omitted).[6]

### 1. Tampering with Physical Evidence Conviction.

KRS[7] 524.100(1) establishes the necessary elements to sustain a conviction for tampering with physical evidence:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

---

[6] Regarding the Commonwealth's assertion that summary affirmance is necessary due to Morris's failure to request palpable error in his initial appellate brief, we have stated,

> CR 76.12(1) and 76.12(4)(e) permit the appellant to file a reply brief "confined to points raised in the briefs to which they are addressed." Generally, an appellant is not obliged to anticipate that the Commonwealth will challenge preservation, and once it does he is free under the rule to reply to the Commonwealth's point by arguing that, even if unpreserved, the error is one that may be noticed as palpable. The Commonwealth, of course, may argue in its appellee's brief not only that the alleged error is unpreserved but also that it does not warrant palpable error relief. It is neither unfair to the Commonwealth nor unduly burdensome to expect it to use that opportunity to address as fully as it deems necessary an issue it has raised."

*Commonwealth v. Jones*, 283 S.W.3d 665, 670 (Ky. 2009). Here, the Commonwealth anticipated a claim of palpable error in reply and so addressed palpable error in its brief.

[7] Kentucky Revised Statutes.

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; or

(b) Fabricates any physical evidence with intent that it be introduced in the official proceeding or offers any physical evidence, knowing it to be fabricated or altered.

We have explained that while KRS 524.100(1) may be broadly interpreted, the Commonwealth is not free to "bootstrap a tampering charge onto another charge" as punishment for its own investigatory failures. *Mullins v. Commonwealth*, 350 S.W.3d 434, 444 (Ky. 2011). In *Mullins*, the Commonwealth asserted that the defendant was guilty of tampering with physical evidence "based on evidence he removed the murder weapon from the crime scene." *Id.* at 442. At trial, however, the testimony presented by the Commonwealth only established that the defendant was the shooter, that he got into a vehicle after committing the crime with a shiny object in his pocket and commanded the accomplice to "drive." Ultimately, the police failed to conduct a search for the weapon until months after the crime, making the eyewitness testimony of the "shiny object" the only evidence upon which the tampering charge could be supported. *Id.* The *Mullins* court continued:

> The evidence presented indicates that the gun was on Appellant's person from the time [the victim] was shot until he entered [the accomplice's] car and told him to drive away, and nothing more. Appellant's walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal.

10

*Id.*[8]  Finally, the *Mullins* court concluded that the defendant was fleeing the scene and that "[t]he fact he carried the gun away from the scene with him was merely tangential to the continuation of that crime[]" and that the police's  failure to find the weapon was not itself evidence of tampering, because the act failed to satisfy KRS 524.100(1)'s requirement of intentionality.  *Id.* at 443–44.[9]

As with *Mullins*, the Commonwealth in this case relies upon the testimony of three individuals to support the trial court's denial of a directed verdict.  However, none of the three witnesses positively identified Morris, or could state with any certainty whether the item they believed to be in his pocket was a weapon.  The first two individuals, Christopher Jackson and Mary Collins, testified that they witnessed an African-American male, likely in his thirties, wearing baggy sweatpants.  Both witnesses stated that the man appeared to be limping and holding something in his pocket.  Neither witness could identify the color of the man's clothing, and neither saw the man carrying a weapon.  Finally, Detective Farmer testified that he received an anonymous phone call

---

[8] The *Mullins* court, additionally, noted that when a crime takes place, the perpetrator will almost always leave the scene with evidence.  If such behavior was criminalized, the Court reasoned, the result would be an impermissible "piling on."  *Id.* at 443.

[9] Morris's behavior can be juxtaposed with the behavior of the defendant in *Hunter v. Commonwealth*, 587 S.W.3d 298, 311 (Ky. 2019).  The Court in that case upheld a conviction for tampering with physical evidence where the defendant, while being chased by police, threw the weapon in his pocket into the backyard of a home he was running by while attempting to avoid capture.  *Id.*

11

from someone who purported to know the location of the weapon Morris allegedly used to shoot Bouland. However, when police searched the location, they were unable to recover the handgun.[10]

Morris's case is identical to *Mullins* in all material respects with regards to the tampering charge. Given law enforcement's failure to locate the gun, that no witness could identify Morris or state with certainty the man they saw was concealing a weapon, and clear case law to the contrary, convicting Morris of tampering with physical evidence amounts to palpable error. *See Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (holding that "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.").

2.    <u>Conviction for assault in the first degree.</u>

KRS 508.010(1)(a) defines assault in the first degree when "[h]e intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument[.]" "Serious physical injury" is defined as a "physical injury which creates substantial risk of death or causes serious and prolonged disfigurement, prolonged impairment of health, or

---

[10] The record is similarly devoid of any mention of Morris's accomplice and getaway driver. We are not aware of any evidence that police sought the individual out, and no evidence exists that they searched for the individual's vehicle. Instead, the police search ended when Morris turned himself in, with all evidence presented at trial appearing to have been collected the day of the shooting.

12

prolonged loss or impairment of the function of any bodily organ."[11]  KRS

500.080(15).  The injury's potential to become serious is not enough, the harm

must be realized.  *Anderson v. Commonwealth*, 352 S.W.3d 577, 581 (Ky.

2011).  Notably, while expert medical testimony is often helpful in establishing

"serious physical injury," victims are presumed competent to provide testimony

as to their own injuries, and the jury must evaluate that testimony.  *Brooks v.

Commonwealth*, 114 S.W.3d 818, 824 (Ky. 2003); *see also McDaniel v.

Commonwealth*, 415 S.W.3d 643, 661 (Ky. 2013) (discussing the definition of

"serious physical injury"); *Anderson*, 352 S.W.3d at 582 (holding that no

serious physical injury occurred when victim suffered a facial laceration,

requiring stitches, but no hospital stay).  In *Anderson*, we explicitly held that

conviction for first-degree assault "when there is a failure of proof on an

element of the crime is a violation of Due Process and thus a manifest injustice

pursuant to RCr 10.26."  *Id.* at 583.

The thrust of Morris's argument is that, because the Commonwealth

failed to call expert medical testimony, and since Bouland did not suffer

prolonged physical harm or disfigurement, that the trial court erred by

instructing the jury on assault in the first degree.  We disagree.

Morris's reliance on *McDaniel* and *Anderson* is misplaced because he fails

to account for, or at the very least take seriously, the implications of Bouland's

testimony.  At trial, Bouland testified that she was struck three times, once in

---

[11] KRS 500.080(13) defines "physical injury" as "substantial physical pain or any impairment of physical condition[.]"

her calf, once in her arm, and finally once in her knee. Bouland's testimony detailed her fear of bleeding out (supported by Officer Kimbro's bodycam recording, in which substantial streaks of blood were visible), and finally that she had to be airlifted to Vanderbilt hospital, where she stayed for four days. Contrasting Bouland's testimony with that of the victims in *McDaniel* and *Anderson* is instructive. In *McDaniel*, the victim suffered a single gunshot wound to the hand. 415 S.W.3d at 661. The victim's testimony did not detail whether the victim suffered from blood loss, or any other circumstances which could have resulted in conviction on assault in the first degree by a reasonable jury. *Id.* Similarly, in *Anderson*, the victim's facial laceration only required sutures, but no other hospital care. 352 S.W.3d at 582. Morris's reliance on the fact that Bouland did not suffer prolonged effects from her wounds simply does not account for the entirety of her injuries.

Finally, we are compelled to reiterate the pivotal role the jury played in evaluating the extent and severity of Bouland's injuries. In this case, the jury was instructed as to both assault in the first and second degree. The jury was in the best position to weigh Bouland's testimony regarding her initial injuries against the evidence of her recovery. We have long held that where the evidence could lead reasonable jurors to different conclusions, the trial court usurps that responsibility from the jury when relevant instructions are not given. *Swan v. Commonwealth*, 384 S.W.3d 77, 101 (Ky. 2012). Consequently, we find no palpable error in the trial court's ruling.

14

### C. Sentencing Phase Error under KRS 532.055.

As a threshold matter, Morris failed to preserve his KRS 532.055 challenge for appellate review. Morris requests palpable error review pursuant to RCr 10.26 and KRE[12] 103.[13]

During the penalty phase of a trial, The Commonwealth is permitted to present the jury with the defendant's "prior convictions," whether the convictions are felonies or misdemeanors. KRS 532.055(2)(a)(1). The Commonwealth violates the plain language of the statute in introducing dismissed or amended charges. *Blane v. Commonwealth*, 364 S.W.3d 140, 152 (Ky. 2012), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015). As the Court discussed in *Chavies v. Commonwealth*, committing an error does not necessarily require reversal. 354 S.W.3d 103, 114–16 (Ky. 2011), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015). In *Chavies*, the Court determined that the Commonwealth committed an error by introducing a prior dismissed indictment during the penalty phase of trial. *Id.* at 114–15. The Court denied that the error was palpable because the Commonwealth only introduced an

---

[12] Kentucky Rules of Evidence.

[13] KRE 103(e) reads:

Palpable error. A palpable error in applying the Kentucky Rules of Evidence which affects the substantial rights of a party may be considered by a trial court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

indictment, did not emphasize the indictment during closing testimony, and Chavies did not receive the maximum sentence for his convictions. *Id.* at 115.

Morris's position is functionally identical to Chavies's, that mention during the penalty phase of an indicted charged, assault in the first degree, subsequently amended to assault in the second degree, was error. This information was provided to the jury when James Utley, the Commonwealth's probation and parole witness, mentioned the indicted charge. Utley's comment, however, was unprovoked, and appears to have been made in passing when the Commonwealth inquired about Morris's prior conviction. The Commonwealth did not mention the charge again, and relied only on Morris's conviction for assault in the second degree during its closing statements of the penalty phase. Notably, and despite Morris's protestation to the contrary, he did not receive the maximum penalty for his convictions. Consequently, the jury could just as likely have relied on some combination of the Commonwealth's argument that Morris only stopped attacking Bouland because he emptied his magazine and that his behavior reflected an increase in the violence of his crimes. Therefore, in light of these facts we do not find that palpable error occurred.

## D. *Hearsay and Bolstering.*

Morris's argument regarding hearsay concerns are two-fold. Morris alleges that Officer Tony Kimbro and Detective Brent Farmer's statements regarding Bouland's identification of Morris as the shooter was "investigative hearsay" and that they, along with several other witnesses, impermissibly

16

bolstered Bouland's identification of Morris as the shooter. The claim also relates to Gary Medina's testimony, although our review of the record does not indicate that Medina knew Morris prior to the incident and thus his testimony was general as to the events he observed. The Commonwealth disputes Morris's characterization of Kimbro's and Farmer's testimony, claiming that the testimony was necessary to account for the police's investigative decision-making following the shooting. Morris concedes that his hearsay argument was not preserved and requests palpable error review. RCr 10.26.

From the outset, we note that "investigative hearsay" is a misleading and non-descriptive term. When officers testify at trial they are subject to the same hearsay rules laid out in KRE 801A, 802, 803, and 804. *Ruiz v. Commonwealth*, 471 S.W.3d 675, 680–82 (Ky. 2015).[14] Testimony, whether coming from the officers, the victim, the defendant, or any other witnesses, are treated alike. "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801(c), *Ruiz* 471 S.W.3d at 681. When the challenged out-of-court statement is only relevant and probative to prove the truth of the matter asserted then its introduction is governed by the hearsay rule. *Id.* In contrast, when the out-of-court statement's probative value is

---

[14] *See also McDaniel v. Commonwealth*, 415 S.W.3d 643, 652-53 (Ky. 2013) (providing a thorough history and explanation of "investigative hearsay" and why we have rejected the notion).

17

independent from the truthfulness of the statement, no hearsay has occurred.

*Id.* at 681.  Put more plainly,

> when the reason that a witness has taken certain actions is an issue in the case, an out-of-court statement that tends to explain that action *would not be hearsay* because it is not offered "to prove the truth of the matter asserted." Rather, it is offered to explain the action that was taken and has relevance regardless of whether the statement was true or false.

*Id.* at 682.

   With regards to Morris's bolstering charge, the law is clear that a "witness may not vouch for the truthfulness of another witness."  *Id.* at 683 (citations omitted).  Instead, bolstering testimony is only appropriate where the witness's credibility has been attacked.  *Tackett v. Commonwealth*, 445 S.W.3d 20, 33 (Ky. 2014) (citing *Brown v. Commonwealth*, 313 S.W.3d 577, 628 (Ky. 2010)).

   Morris's allegations of impermissible hearsay and bolstering fail because his analysis is incomplete.  While Morris now identifies instances in which Kimbro's and Farmer's testimony amounted to hearsay, he fails to identify how those errors fall within the contours of the palpable error rule.  Bouland and Medina both testified at length and were subject to rigorous cross-examination, during which Morris attempted to impeach their accounts.  In addition, throughout the trial, Morris took issue with the investigative thoroughness of the officers.  Morris claims that his theory of misidentification precluded the officers (and the bevy of other witnesses) from relaying their conversations with Bouland and Medina to the jury.  However, even if we take Morris at his word,

18

that his defense was misidentification, and not the credibility of the two eyewitness accounts, the officers' decisions following the shooting would still be material because their failure to investigate would have resulted in the wrong man being brought before the jury. Consequently, the jury was entitled to understand the context of the officers' decisions, as they related to Bouland and Medina, and as they related to the other witness accounts. Under these circumstances we do not believe errors occurred. And, even if errors did occur, they were not obvious and certainly did not result in manifest injustice.

### E. *Prosecutorial Misconduct.*

Morris's final challenge is that the Commonwealth's closing argument denigrated his counsel and was unduly prejudicial. Once again, Morris has failed to preserve this challenge, and so we review for palpable error. RCr 10.26. As stated in Morris's brief, the Commonwealth's closing included, the following:

> [defense counsel] is an excellent attorney. She has done a good job of asking questions about the investigation. This is a defense tactic and she's good at it. She's trying to get you to look over here. She said it multiple times-what wasn't... anything to get you not to look at evidence that points to her client.

Morris mischaracterizes the Commonwealth's statement because he fails to capture the context within which the above quoted language occurred. The Commonwealth was responding to Morris's charge that the investigation was lax and led to his misidentification as the perpetrator. In doing so, the Commonwealth reiterated that while Morris was rightfully questioning the investigation, the jury's role was not to "grade the investigation" like a school

19

exam, but to determine whether the Commonwealth had met its burden of proof, despite the alleged investigative deficiencies.

This Court has long held that during closing arguments, attorneys "may comment on tactics, may comment on evidence, and may comment as to the falsity of the [opposing side's] position." *Stopher v. Commonwealth*, 57 S.W.3d 787, 806 (Ky. 2001) (citing *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987)). While Morris correctly states that prosecutors must "stay within the record and avoid abuse of the defendants and their counsel[,]" he has failed to identify how the Commonwealth ran afoul in his case. *Caudill v. Commonwealth*, 374 S.W.3d 301, 309 (Ky. 2012) (quoting *Whitaker v. Commonwealth*, 298 Ky. 442, 443, 183 S.W.2d 18 (1944)). Consequently, we find no prosecutorial misconduct in the Commonwealth's closing remarks.

### III. CONCLUSION.

For the foregoing reasons, the judgment of the Graves Circuit Court is affirmed; excepting that we reverse the conviction of tampering with physical evidence and remand the case to the Graves Circuit Court to enter judgment in accordance with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Jennifer Leigh Wade
Department of Public Advocacy

20

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Lee Baldridge
Assistant Attorney General